## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

CIVIL ACTION FILE NO.  10-CV-59-WDM-MEH

GRAY PETERSON,
        Plaintiff,

v.

ALVIN LACABE, in his official capacity as Manager of Safety for the City and
                                County of Denver,
and
PETER WEIR, in his official capacity as Executive Director of the Colorado
                                Department of Public Safety,

        Defendants.

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST
## DEFENDANT LACABE

---

### Introduction

        Plaintiff commenced this civil rights action to challenge Defendant LaCabe's

denial of Plaintiff's application for a Colorado handgun permit ("CHL") because of

Plaintiff's non-residency, and to challenge Defendant Weir's refusal to recognize

Plaintiff's permits issued by his home state of Washington and the State of Florida.

Plaintiff's claims are based on various provisions in the Constitution of the United

States and 42 U.S.C. § 1983.  Because there are no genuine issues of material fact as between Plaintiff and Defendant LaCabe ("Defendant") and because Plaintiff is entitled to judgment as a matter of law, Plaintiff moves for summary judgment against Defendant.

## Background and Statement of Facts

Plaintiff is a resident of the State of Washington and a citizen of the United States.  Decl. of Gray Peterson, ¶ 2.  Plaintiff is a frequent visitor to Colorado and to Denver in particular.  *Id., ¶* 3.  Plaintiff exercises his right to carry a handgun for the purpose of self-defense wherever possible, and desires to do so when he visits Denver.  *Id., ¶* 4.   Plaintiff's primary method of carrying a handgun is openly, however he would comply with the requirement under Denver's laws prohibiting any form of carry besides concealed with a CHL.  *Id., ¶* 5.  Colorado law prohibits the carrying of a concealed firearm outside of one's ***own*** dwelling, place of business, or a private automobile without a permit to carry a concealed handgun ("CHL")[1].  C.R.S. § 18-12-105.  Denver law is even more restrictive, prohibiting the carrying of a concealed firearm outside one's dwelling or place of business without a CHL (Denver Ord. § 38-

---

1       Various states use different terminology to describe the licenses they issue to people to carry firearms and other weapons.  For the sake of simplicity, such

117(a)), and prohibiting the carrying of a firearm *at all* outside one's dwelling or place of business without a CHL (Denver Ord. § 38-117(b)).

Plaintiff has no dwelling or place of business in Colorado. *Id.,* ¶ 6. Thus, Plaintiff must have a Colorado CHL, or a CHL issued by another state but to which Colorado gives reciprocity[2], in order to carry a handgun in any manner in Denver.

Plaintiff has a CHL from both Washington and Florida. *Id.,* ¶ 7. Colorado does not recognize or give reciprocity to CHLs issued by Washington. Colorado does recognize Florida CHLs, but only those issued to residents of the State of Florida (the propriety of restricting reciprocity to residents of the states where CHLs are issued is the essence of the claim against Defendant Weir and is outside the scope of this Motion).

Colorado law prohibits the issuance of CHLs to non-residents of Colorado. C.R.S. § 18-12-203(1)(a). Nonetheless, on or about June 2, 2009, Plaintiff filled out

---

licenses, including ones issued pursuant to Colorado law, are generically referred to in this Motion as "CHLs."

2       According to the website of the Colorado Department of Public Safety, Colorado Bureau of Investigation, Colorado honors CHLs from Alabama, Alaska, Arizona, Arkansas, Delaware, Florida, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Michigan, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New Mexico, North Carolina,  North Dakota, Oklahoma, Pennsylvania, South Dakota,  Tennessee, Texas, Utah, and Wyoming.  http://cbi.state.co.us/ic/Reciprocity.html

an application in Denver County for a Colorado CHL. Doc. 13, p. 3. Defendant is the Manager of Safety for the City and County of Denver and the *ex officio* sheriff of Denver County. *Id.* Pursuant to C.R.S. § 18-12-203, Defendant or his designee is vested with statutory authority to issue CHLs to applicants who meet the statutory criteria for obtaining a CHL. *Id.* Except for Plaintiff's lack of Colorado residency, Plaintiff meets the statutory criteria for obtaining a CHL. Peterson Decl., ¶ 8.

On or about July 2, 2009, Defendant sent Plaintiff a letter notifying Plaintiff that Plaintiff's application for a CHL was denied. Doc. 13, p. 3. Defendant denied Plaintiff's CHL application because Plaintiff is not a resident of the State of Colorado. *Id.*

## Argument

Summary judgment should be granted if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009). In the instant case, most of the operative facts were stipulated by the parties and included in the Court's Scheduling Order [Doc. 13]. Plaintiff supplements the stipulated facts with a declaration of a handful of background facts concerning Plaintiff about which

Defendant is in no position to dispute.  There is therefore, no dispute over any facts.

Plaintiff will show below that he is entitled to judgment as a matter of law.

## I.  Defendant Violated Plaintiff's Right to Travel

Under the Colorado statutory scheme, which Defendant applied against Plaintiff, Colorado residents can obtain a Colorado CHL and freely carry a handgun throughout Denver and the rest of Colorado (except in certain sensitive places where firearms carry is not allowed by other state law).  In addition, residents from 28 other states with CHLs issued by their home states can freely carry a handgun, openly or concealed, throughout Denver and the rest of Colorado.  On the other hand, Washington residents, including Plaintiff, cannot obtain a Colorado CHL, and cannot obtain a CHL from any state that will be recognized by Colorado.

Plaintiff is prohibited, by the combined effect of Colorado statutes and Denver ordinances, from carrying a firearm openly or concealed in Denver (outside his own dwelling or place of business). Plaintiff has no dwelling or place of business in Colorado.  Plaintiff is, therefore, disarmed while in Denver.

The gist of the Colorado system, which Defendant applied against Plaintiff, is that Plaintiff (as a Washington resident) is prohibited from engaging in an activity that residents of Colorado (and many other states) are permitted to do.  Plaintiff is

therefore penalized when he travels to Denver (and all of Colorado) in a way that Colorado residents (and residents of 28 other states) are not penalized.

The right to travel freely from one state to another "occupies a position fundamental to the concept of our Federal Union." *United States v. Guest,* 383 U.S. 745, 757 (1966). *See also Saenz v. Roe,* 526 U.S. 489, 119 S.Ct. 1518 (1999) (newly arrived citizens' access to welfare benefits in new state protected by right to travel and the privileges and immunities enjoyed by other citizens). Plaintiff's fundamental right to travel to and from the State of Colorado (and the City of Denver), enjoying the same ability to defend himself as Coloradans have, is frustrated by Defendant's refusal to grant Plaintiff a Colorado CHL.

"Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, 901 (1986), *citing Dunn v. Blumstein,* 405 U.S. 330, 338 (1972).[3] A state law implicates the right to travel when it "uses any classification which serves to

---

3       "The textual source of the constitutional right to travel, or, more precisely, the right of free interstate migration, though, has proved elusive. It has been variously assigned to the Privileges and Immunities Clause of Art. IV… to the Commerce Clause,… and to the Privileges and Immunities Clause of the Fourteenth Amendment [sic]… The right has also been inferred from the federal structure of

penalize the exercise of that right." In the case at bar, the Colorado classification allows residents of Colorado, and 28 other states, to carry firearms for self-defense throughout the entire state, but it bars Washington residents such as Plaintiff from exercising exactly the same right. This Motion focuses on the classification that allows Colorado residents to exercise the right by obtaining a Colorado CHL but denies the ability of non-residents to obtain a Colorado CHL.

States may, of course, have bona fide residency requirements for "services" that they provide to their residents. *Martinez v. Bynum,* 461 U.S. 321, 326 (1983). "This view assumes, of course, that the 'service' that the state would deny to nonresidents is not a fundamental right protected by the Constitution. A state, for example, may not refuse to provide counsel to an indigent nonresident defendant at a criminal trial…. " *Id.* at 328.

The instant case involves just such a fundamental constitutional right. The right to keep ***and bear*** arms is an "individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller,* 128 S.Ct. 2783, 2797 (2008). There is no doubt that this right is a fundamental one ("By the time of the founding, the right to have arms had become fundamental…."). *Id.* at 2798. Moreover, "the American

government adopted by our Constitution." *Soto-Lopez,* 476 U.S. at 902. [citations

people have considered the handgun to be the quintessential self-defense weapon." *Id.* at 2818. Thus, the right to carry a handgun for self defense in case of confrontation is a fundamental constitutional right.

The Colorado system denies Plaintiff the exercise of a fundamental constitutional right based solely on the fact that Plaintiff is not a Colorado resident. It heavily penalizes Washington residents who engage in travel to Colorado, just as surely as if it denied Washington residents to right to worship while visiting Colorado or if it imposed warrantless searches on every Washingtonian who flies into Denver International Airport.

"Whenever a state law burdens the right to travel, the court must apply strict scrutiny and ask whether the challenged law 'is necessary to further a compelling state interest.'" *Peruta v. County of San Diego,* 2010 U.S. Dist LEXIS 2831, 42 (S.D. Calif 2010), *citing Soto-Lopez,* 476 U.S. at 904-905 (plurality). "The heavy burden of justification is on the State, and the court will closely scrutinize the challenged law in light of its asserted purposes." *Id.*

In his response to this Motion, Defendant will have to assert the "compelling state interest" that drove Colorado to prohibit issuance of CHLs to non-residents. This

omitted]

–8–

will be a particularly daunting task for Defendant, given that the Colorado General Assembly declared in the 2003 act creating the statewide CHL system that "[T]he issuance of a concealed handgun permit is based on a person's constitutional right of self-protection and there is a prevailing state interest in ensuring that no citizen is arbitrarily denied a concealed handgun permit."  Sen. Bill 03-024, creating C.R.S. § 18-12-201(1)(e).  Assuming *arguendo* that Defendant is able to articulate a state interest that is so compelling that it justifies penalizing Plaintiff when Plaintiff travels to Colorado, Defendant then will have to explain why the system established by Colorado is necessary to advance that interest.  Defendant's failing either of these difficult tasks necessarily will result in a finding that the Colorado system fails constitutional muster.

It is self-evident that Defendant cannot meet those burdens.  Colorado has no legitimate interest in denying a fundamental right to citizens based on their state of residency.  Instead, Colorado has stated, via its general assembly, that it has an interest in ***protecting*** that very right.  Defendant, in his good faith attempt to observe Colorado statutes, has violated Plaintiff's constitutional right to travel.

## II.  Defendant Violated Plaintiffs' Rights Under the Privileges and Immunities Clause of the U.S. Constitution

Art. IV, § 2 of the Constitution provides, in pertinent part, "The Citizens of each State shall be entitled to al the Privileges and Immunities of Citizens in the several States."

In a Privileges and Immunities Clause case, the Court must first determine if the activity in question is "sufficiently basic to the livelihood of the Nation.  If it is, the challenged scheme will be invalidated only if it is not closely related to the advancement of a substantial state interest." *Supreme Court of Virginia v. Friedman,* 487 U.S. 59, 64-65 (1988).

The right to self defense existed at common law before and at the time of ratification of the Constitution.  *Heller* at 2802.  Citizens continue to have an inherent right to self defense.  *Id.* at 2817.

Plaintiff, however, is prohibited from carrying a handgun at all in Denver.  By refusing to issue Plaintiff a CHL, Defendant has ***completely*** barred Plaintiff from carrying the quintessential self defense weapon ***anywhere in the city***.  While many Privileges and Immunities Clause cases involve commercial activities (*see, e.g., Baldwin v. Montana Fish & Game Commission,* 436 U.S. 371 (1978); *Toomer v. Witsell,* 334 U.S. 385 (1948)), the Clause is by no means limited only to commercial

activities.  In *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 282 (footnote

11) (1985), the Court found that the practice of law is important to the "maintenance

or well-being of the Union" not just as a profession but because lawyers represent

people who raise unpopular federal claims.  *Piper,* 470 U.S. at 281.

Likewise, the Supreme Court extended the Privileges and Immunities Clause to

a noncommercial context when it held in *Doe v. Bolton,* 410 U.S. 179, 200 (1973) that

Georgia's law limiting the availability of abortions to Georgia residents only (and thus

discriminating against nonresidents) violated the Privileges and Immunities clause.  In

*Bolton,* the Court focused on the availability of medical care as the privilege at issue

(not in any way discussing the commercial aspects of the practice of medicine).  *Id.*

*See also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S.Ct. 753

(1993) ("A woman's right to engage in interstate travel for this purpose (*i.e*, abortion)

is . . . entitled to special respect because she is exercising a constitutional right . . .

Federal courts are uniquely situated to protect that right for the same reason they are

well suited to protect the privileges and immunities of those who enter other States to

ply their trade").    If the availability of abortions, an unenumerated right not

mentioned in the Constitution, is "basic to the livelihood of the nation," then it is

inconceivable that a specifically enumerated, fundamental right, such as the right to keep and bear arms, is not.

"It is equally clear that a state may not deprive noncitizens of the ability to engage in an essential activity or exercise a basic right." Lee v. Minner, 458 F.3d 194 (3rd Cir. 2006) (punctuation omitted). There is no right more basic than what *Heller* terms the "natural right of resistance and self-preservation." 127 S.Ct. at 2798. *See also Chambers v. Baltimore & Ohio R. Co.,* 207 U.S. 142, 148, 28 S.Ct. 34, 52 L.Ed. 143 (1907) (basic right of nonresidents to access courts protected by the Privileges and Immunities Clause); *Chappell v. Rich,* 340 F.3d 1279, 1282-83 (11th Cir. 2003) (basic right of access to courts secured by, *inter alia*, Article IV's Privileges and Immunities Clause).

As noted above, the standard of review for Privileges and Immunities cases is "closely related to the advancement of a substantial state interest." Again, however, Colorado has no legitimate interest, substantial or otherwise, in depriving Plaintiff of his right to keep and bear arms. Given that Colorado freely permits CHL holders from 29 states, including Colorado, to exercise this right, Colorado cannot articulate a reason why the right should be denied to Washingtonians.

## III.  Defendant Violated the Second Amendment

In addition to infringing on Plaintiff's constitutional right to travel and his privileges and immunities as a citizen of the United States, Defendant has infringed directly on Plaintiff's right to keep and bear arms.  The Second Amendment provides, "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."  As has been discussed in earlier sections of this Motion, the right to bear arms in general, and particularly handguns, is a fundamental constitutional right that pre-dates the founding of this nation.

The Supreme Court in *Heller* rejected application of the rational basis test to Second Amendment issues, 128 S.Ct. at 2818, leaving for another day the determination of whether intermediate scrutiny or strict scrutiny applies.  Under either standard, however, the Colorado system fails.  Strict scrutiny was discussed above regarding the right to travel.

Under intermediate scrutiny, the system must "directly advance a substantial governmental interest and be no more extensive than is necessary to serve that interest."  *Milavetz, Gallop & Milavetz, P.A. v. United States,* 176 L.Ed.2d 79, 94; 2010 U.S. LEXIS 2206, 36 (2010).  Given that Colorado allows both its own residents

and the residents of 28 other states to exercise the right to carry handguns throughout the state, Defendant will be hard-pressed to articulate a "substantial government interest" in preventing Washington residents from exercising that right.

## Conclusion

The Colorado system, applied by Defendant to Plaintiff, prohibits Plaintiff from exercising a fundamental constitutional right solely on account of his Washington residency, even though residents of Colorado and 28 other states are freely allowed to exercise that right.  This wrong can readily be remedied.  Colorado has in place a system for issuing CHLs.  Defendant administers that system in the City and County of Denver.  Defendant should be ordered to disregard Plaintiff's residency status and process Plaintiff's CHL application accordingly.

_____/s/ John R. Monroe_____
John R. Monroe
Attorney for Plaintiff
9640 Coleman Road
Roswell, GA  30075
678 362 7650
John.monroe1@earthlink.net

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 1, 2010, I filed the foregoing using the ECF system, which automatically will send copies electronically to:

> Linda M. Davison
> Attorney for Defendant LaCabe
> Assistant City Attorney
> Denver Dept. of Human Services
> 1200 Federal Blvd., 4th Floor
> Denver, CO  80204
> 720-944-2626
> Linda.davison@denvergov.org

> Diane Marie Dash
> Attorney for Defendant Weir
> Senior Assistant Attorney General
> Criminal Justice Section
> 303-866-5439
> Diane.dash@state.co.us

> _____ /s/ John R. Monroe
> John R. Monroe