# EXHIBIT E

| | |
|---|---|
| **DISTRICT COURT**<br><br>**CITY AND COUNTY OF DENVER, COLORADO** | |
| Plaintiffs:<br><br>**CITY AND COUNTY OF DENVER**, a home rule municipal corporation of the State of Colorado; and **WELLINGTON E. WEBB**, as Mayor of the City and County of Denver<br><br>Defendants:<br><br>**STATE OF COLORADO** and **BILL OWENS**, in his official capacity as Governor of the State of Colorado |   COURT USE ONLY  <br><br>Case Number:<br><br>**03 CV 3809**<br><br>**Courtroom 18** |
| **O R D E R   O N   C R O S S   M O T I O N S   F O R   S U M M A R Y   J U D G M E N T** | |

In the 2003 legislative session, the General Assembly passed Senate Bills 24 and 25. Both bills were signed into law by Governor Owens on March 18, 2003. The bills contained sweeping legislative declarations that identify control of firearms as a state interest and seek to preempt conflicting local laws. Senate Bill 24 addresses primarily a uniform system for issuing permits for carrying concealed handguns, while Senate Bill 25 addresses other aspects of firearms regulation.

The City and County of Denver is a home rule city created and organized under Article XX, Section 6 of the Colorado Constitution (the "home rule amendment"). Under the home rule amendment, a home rule municipality has the supreme power to legislate in matters of local concern. Historically, Denver has had a range of ordinances controlling various aspects of the possession, use and sale of firearms in the city.

In this action, Denver seeks a declaratory judgment that specified Denver ordinances are not preempted by state law and, alternatively, that Senate Bill 24 and 25 are unconstitutional under the home rule amendment to the extent that they seek to preempt local laws. The City seeks an injunction against state "enforcement" of Senate Bills 24 and 25 and asks that the Court enjoin the state from interfering with Denver's enforcement of its ordinances.

After the State's motion to dismiss for lack of standing was denied, the case was set for trial. Prior to the trial date, the parties reached agreement that there are no disputed issues of material fact and that the case could be decided as a matter of law on cross motions for summary judgment. Therefore, the trial date was vacated, and each party filed a motion for summary

judgment. Those motions have been fully briefed, and oral argument was heard on September 24, 2004. As directed at oral argument, the parties have submitted supplemental filings specifying the relief they request. The City has also tendered to the Court copies of certain amended ordinances which had not been provided earlier.

The City's complaint addressed 15 specific ordinances and two regulations. Complaint, ¶ 7. One of those ordinances has since been repealed, and another has been amended. The State now concedes that nine ordinances and the two regulations do not conflict with state law.[1] Although they overlap to some extent, the remaining ordinances can be divided into five topical categories: (1) concealed handguns/firearms in vehicles; (2) open carrying of firearms; (3) assault weapons/Saturday night specials; (4) safe storage/juveniles; and (5) firearms in city parks. In summary, the State argues that all of the City's ordinances in these areas are preempted by the State's interest and participation in the field of firearms regulation. The City's position is that each ordinance must be examined separately and that the disputed ordinances either do not conflict with state law or address matters of purely local concern.

I agree with the City that the ordinances must be examined and analyzed individually. They address disparate topics which require distinct analysis under the home rule jurisprudence of Colorado. For example, the weighing of the factors to be considered in determining whether a matter is of purely local, purely state or mixed concern is quite different for ordinances controlling firearms in automobiles as compared to ordinances prohibiting firearms in City-owned parks. Therefore, I will address and state my conclusions with regard to each discrete area separately.

HOME RULE PRINCIPLES

Article XX, Section 6 of the Colorado Constitution grants home rule status to municipalities opting to adopt home-rule charters.

> It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal

---

[1] The ordinances conceded by the State, either in briefing or at oral argument are as follows:

§14-92, Firearms in Vehicles, Presumption of Possession
§38-117(c), Display and Flourishing of Weapons
§38-121, Firing and Discharge of Firearms
§38-122(a) Restrictions on Display of Firearms in Store Windows
§38-123, Identification and Records of Weapons Sales
§38-124, Sale of Weapons to Intoxicated Persons
§38-125, Reports of Gun Sales (repealed)
§42-137, Security Guard Prohibited from Carrying Firearms Unless Licensed
§59-80(6)(c)(1), Sale of Firearms in Residential Zone Districts (conceded at hearing)
Manager of Aviation's Rules 10.33, 20.09, 20.10, Firearms on Airport Property (conceded at hearing)
Career Service Rules 15-110 and 16-50, Possession of Firearms by Employees

Case 1:10-cv-00059-WDM-MEH   Document 33-5   Filed 12/09/10   USDC Colorado   Page 4 of 17

matters and the enumeration herein of certain powers shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right.
The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except insofar as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters.

Article XX, Section 6, Colo. Const.

The home rule amendment, added to the Constitution in 1912, abrogated Dillon's Rule which stated that municipal corporations owe their origin to and derive their powers and rights from the legislature. The effect of the amendment was to grant home rule municipalities "every power theretofore possessed by the legislature to authorize municipalities to function in local and municipal affairs." City and County of Denver v. State, 788 P.2d 764, 767 (Colo. 1990) (quoting Four-County Metro. Capital Improvement Dist. v. Board of County Comm'rs., 369 P.2d 67,72 (Colo. 1962)).  Although the legislature continues to exercise supreme authority over matters of statewide concern, a home rule city is not inferior to the General Assembly with respect to local matters.

In determining the relative authority between the General Assembly and home rule municipalities there are three broad categories of regulatory matters to consider: 1) matters of local concern; 2) matters of statewide concern; and 3) matters of mixed local and statewide concern.  Id.; Trinen v. City and County of Denver, 53 P.3d 754, 758-759 (Colo. App. 2002); City of Commerce City v. State, 40 P.3d 1273, 1279-1280 (Colo. 2002); City and County of Denver v. Qwest Corp., 18 P.3d 748, 754 (Colo. 2001).  These categories are described in more detail below.

In matters of local concern, a home rule municipality has plenary authority. Qwest Corp., 18 P.3d at 754.   While the state may legislate in areas of local concern, see City and County of Denver v. State, 788 P.2d at 767 (Colo. 1990), home rule ordinances or regulations control in the event of a conflict with state legislation.  Id.; City of Commerce City, 40 P.3d at 1279; City and County of Denver v. State, 788 P.2d at 767.  By contrast, the General Assembly has exclusive authority to legislate in areas of statewide concern.  That is, the state legislature may adopt legislation, and home rule municipalities are without power to act unless authorized by the constitution or by state law.  See, Trinen, 53 P.3d at 758; Qwest Corp., 18 P.3d at 754; City and County of Denver v. State, 788 P.2d at 767.   If the matter is one of mixed local and statewide concern, home rule provisions and state statutes may coexist when the measures can be harmonized.  In the event of a conflict, however, the state statute supersedes the home rule provision. Trinen, 53 P.3d at 758; Qwest Corp., 18 P.3d at 754; Town of Telluride v. Lot Thirty-Four Venture LLC, 3 P.3d 30, 37 (Colo. 2000); City and County of Denver v. State, 788 P.2d at 767.  Even when a home rule city has considerable local interests at stake, a particular issue may be characterized as one of mixed concern for purposes of determining a home rule municipality's authority when sufficient state interests also are implicated. Town of Telluride, 3 P.3d at 37; but see J. Coats dissent in City of Northglenn v. Ibarra, 62 P.3d 151,165 (Colo. 2003)(the General Assembly cannot make a matter of local concern any less so by imposing its own regulatory scheme, even where it has legitimate statewide concerns).

Therefore, determining whether the state laws enacted by Senate Bills 24 and 25 preempt the disputed Denver ordinances depends on whether they address matters of local, statewide, or mixed local and statewide concern.  The Colorado Supreme Court has repeatedly announced certain tests to determine whether a matter is local, state or mixed.  These categories, however, are not mutually exclusive.  They do not provide perfectly distinct descriptions of competing governmental interests.  They often merge imperceptibly, City and County of Denver v. State, 788 P.2d at 767, thereby making the tests for identifying the category imprecise and easier to state than to apply.  The tests include:

### *Totality of the Circumstances*

To determine whether a state or home rule municipality's rules govern, the Court must consider the totality of the circumstances to make its conclusion that a particular subject matter is one of local, statewide, or mixed concern. City of Commerce City, 40 P.3d at 1279-1280; Town of Telluride, 3 P.3d at 37.  This analysis involves consideration of both fact and policy, Qwest Corp., 18 P.3d at 754-755, directed toward weighing the respective state and local interests implicated by law.  Town of Telluride, 3 P.3d at 37.  The determination is *ad hoc*, taking into consideration the facts of each case. City and County of Denver v. State, 788 P.2d at 767-768.

### *Legislative Declarations*

The General Assembly's declaration that an issue is a matter of statewide or local concern is not conclusive, but should be afforded deference in recognition of the legislature's authority to declare public policy of the state in matters of statewide concern.  Town of Telluride, 3 P.3d at 37 (citing City and County of Denver v. State, 788 P.2d at 768 n. 6 (noting that General Assembly's declaration is not binding)).  It is not up to the courts to make or weigh policies.  Id. at 38.  Thus, when sufficient state interests are implicated, an issue that also implicates local interests is still a matter of mixed local and statewide concern.  Id.

### *Key Factors*

Finally, in determining whether a state interest is sufficient to justify home rule preemption, a variety of factors should be considered.  These factors are intended to assist the Court in measuring the importance of the state interests against the importance of the local interests in order to make an ad hoc decision as to which law should prevail.  They include: 1) the need for statewide uniformity of regulation; 2) the impact of the measure on individuals living outside the municipality (extraterritorial impact); 3) historical considerations concerning whether the subject matter is one traditionally governed by state or local government; 4) whether the Colorado Constitution specifically commits the particular matter to state or local regulation; and 5) whether there is a need for governmental cooperation to facilitate the laws concerning the subject matter in question. City of Northglenn, 62 P.3d at 156; City of Commerce City, 40 P.3d at 1280; City and County of Denver v. Qwest, Corp.,18 P.3d at 754-55; Town of Telluride, 3 P.3d at 37; City and County of Denver v. State, 788 P.2d at 768.

The parties agree that regulation of firearms is generally a matter of mixed concern.  See Plaintiff's Response to Defendants' Motion at p. 2; Defendants' Motion for Summary Judgment at pp. 5-6.  In Trinen v. City and County of Denver, 53 P.3d 754 (Colo. App. 2002), which upheld as constitutional a former version of the City's ordinance concerning firearms in vehicles,

the parties agreed that the matter was of mixed local and state concern. However, the City argues in this case that the specific ordinances at issue here address matters of strictly local concern where the City's interests should outweigh the insubstantial state interests shown. This highlights the need to analyze each separate ordinance individually.

PREEMPTION PRINCIPLES

If a matter is of mixed concern, the next inquiry is whether the local and state laws are in conflict, or whether they can be read harmoniously to effectuate the interests of both governments. See Trinen, 53 P.3d at 758. Conflicts between local and state laws may arise either expressly or by mere implication. Express conflicts exist when an ordinance or local regulation authorizes what state legislation forbids or forbids what state legislation authorizes. City of Commerce City, 40 P.3d at 1284. An implied conflict arises when a local ordinance and a state law prevent each other from effectuating their purposes without necessarily legislating on the same subject matter. See e.g., City of Northglenn, 62 P.3d at 156; Town of Telluride, 3 P.3d at 37. Should a home rule ordinance or regulation conflict with state law in an area of mixed concern, the local law will be preempted.

Although state laws prevail in the event of a conflict in an area of mixed concern, courts should first look to determine whether the ordinance and state law can coexist. Understanding that laws must be read to accomplish the purpose for which they were enacted, courts must examine the context of the legislation to determine whether the local and state laws can be harmonized in an area of mixed local and statewide concern. This includes, but is not limited to, examining the title of the specific statute, the language of its provisions and its statement of purpose. Trinen, 53 P.3d at 759.

It is noted that the State's interest in regulation of firearms is based in part on a desire to protect the constitutional right of a person to keep and bear arms. See C.R.S. §§ 18-12-201(e), 29-11.7-101(a)(b) (2003). This right, however, is not absolute and does not automatically preempt firearm regulation. Contrary to the declarations in Senate Bill 25, the right to bear arms has not been held by the courts to be a fundamental right. See Trinen, 53 P.3d at 757 (citing People v. Young, 859 P.2d 814 (Colo. 1993)). Moreover, the right is specifically limited where the constitutional provision states that "nothing herein contained shall be construed to justify the practice of carrying concealed weapons." See Art. II, §13, Colo. Const. Firearm regulations promulgated by the State or a local municipality under the home rule amendment may coexist with the constitutional right to keep and bear arms so long as such regulations are a reasonable exercise of the governments' police powers. See, e.g., Robertson v. City and County of Denver, 874 P. 2d 325 (Colo. 1994) (upholding Denver's assault weapons ban); Trinen, 53 P. 3d 754; People v. Pflugbeil, 834 P.2d 843 (Colo. App. 1992) (order depriving mental patient of right to weapons).

Recognizing these general principles, I now turn to the five subject areas remaining in dispute.

CONCEALED HANDGUNS/FIREARMS IN VEHICLES

Senate Bill 24 establishes statewide uniform standards for issuance of permits for the carrying of concealed handguns. C.R.S. §18-12-201 et. seq. (2003)  The City does not challenge that aspect of the bill and has amended its ordinances accordingly.  However, the bill also addresses where a permit holder may carry a concealed handgun and when handguns may be carried without a permit.  The City contends that its ordinances on these topics should not be preempted.  There are two subsets of issues in this category, but they must be treated together since the statutes and ordinances are intertwined:  (1) where concealed handguns may be carried with a permit; and (2) having firearms in automobiles without a permit.

In general, both state law and Denver's ordinances prohibit carrying a concealed handgun without a permit unless the gun is in an automobile or being used for hunting.  However, the differences in the details between state and local laws apparently give rise to the dispute between the parties in this area.

Section 38-117(a) of the Denver Revised Municipal Code ("DRMC") provides:

> It shall be unlawful for any person, except a law enforcement officer in the performance of duty, to wear under their clothes, or concealed about their person any dangerous or deadly weapon, including, but not by way of limitation, any pistol, revolver, rifle, shotgun . . . or other dangerous or deadly weapon.

As amended on July 12, 2004, subsection (f) of § 38-117 provides that it is not an offense if the person carrying the concealed weapon holds a valid permit and is carrying the handgun in compliance with state or local law.  Subsection (f) also provides that it is not an offense if:

> The person is carrying the weapon concealed within a private automobile or other private means of conveyance, for hunting or for lawful protection of such person's or another person's person or property, while traveling into or through the city to or from another jurisdiction, regardless of the number of times the person stops in the city or the other jurisdiction, and the weapon is not an explosive device, incendiary device, or a bomb.

DRMC §38-118 supplies affirmative defenses to charges brought under §38-117(a) if the weapon is carried by a person:

> (1) In a private automobile or other private means of conveyance for lawful protection of their or another's person or property, when there is a direct and immediate threat thereto, while traveling away from the area of their residence or business;

-6-

>    (2) In their own dwelling, or place of business, or on property owned or under their control at the time of the act of carrying such weapon. . . .

As enacted by Senate Bill 24, C.R.S. §18-12-204(2)(a) (2003) states that "a permittee, in compliance with the terms of a permit, may carry a concealed handgun as allowed by state law." C.R.S. §18-12-204(3)(a) provides that:

>    A person who may lawfully possess a handgun may carry a handgun under the following circumstances without obtaining a permit and the handgun shall not be considered concealed:
>
>    (I) The handgun is in the possession of a person who is in a private automobile or in some other private means of conveyance and who carries the handgun for a legal use, including self defense; or
>
>    (II) The handgun is in the possession of a person who is legally engaged in hunting activities within the state.

In C.R.S. §18-12-214(1)(a) (2003), also added by Senate Bill 24, state law authorizes a person with a permit to carry a concealed handgun in "all areas of the state, except as specifically limited in this section . . . a local government does not have authority to adopt or enforce an ordinance or resolution that would conflict with any provision of this part 2." In subsection (2), that statute provides that a permit for a concealed handgun does not authorize the permittee to carry the concealed handgun into a place where the carrying of firearms is prohibited by federal law, on public school property or in a public building with security personnel and electronic weapons screening devices in place and operational. Otherwise, state law, like the Denver ordinance, prohibits the carrying of a concealed handgun without a permit, with few exceptions. C.R.S. §18-12-105(1) and (2) (2003).

Generally, the parties agree that the matter of concealed carry of firearms is one of mixed local and state concern. See Plaintiffs' Response to Defendants' Motion for Summary Judgment at p. 2; Defendants' Motion for Summary Judgment at pp. 5-6. As stated above, in a mixed area, a local ordinance can exist alongside a state statute as long as there is no conflict between them. The City argues that there is no conflict between its ordinances, as amended, and the State statutes on concealed carrying. The State responds that the City's affirmative defense of self-defense is more restrictive than the State statute because it requires that the person with the gun be under a "direct and immediate threat." The State also argues that the City's ordinance, even as amended, allows for a future conflict where it states that a permittee has not committed an offense as long as he or she is "carrying a handgun in conformance with any applicable state or *local* law." DRMC §38-117(f)(1). The State postulates that the City in the future may pass a local law prohibiting permittees from carrying concealed weapons into City buildings even where there are no security personnel or metal detectors.

I agree with the State in part. The State's interest in the concealed carry of firearms is significant. The State has historically regulated the lawful carry of concealed weapons, see C.R.S. §18-12-105, and through Senate Bill 24 (C.R.S. §§18-12-201 *et. seq.*), it stepped in to provide a comprehensive permitting scheme for the lawful possession of concealed handguns throughout Colorado. The city effectively acquiesced to the State's authority in this area by its decision not to challenge the state's imposition of uniform permitting standards and by its repeal or modification of ordinances that expressly conflicted with the new state law. Thus, state law now provides the overriding authority concerning concealed carry of handguns and establishes a degree of uniformity for obtaining permits and identifying those instances when a permit is not required. This legislation enables a permit holder to have consistent expectations about the lawful possession of concealed handguns when present anywhere in the state. Accord, City of Commerce City, 40 P.3d at 1281 (state's baseline regulations for automated ticketing procedures provided needed degree of uniformity that allowed citizens to develop basic expectations about how they will be ticketed). This appears to be the ultimate purpose of the permitting scheme and Senate Bill 24.

In this context, the City's argument that §38-117(f) should survive because it seeks to prohibit carrying a concealed weapon without a permit only in vehicles used strictly for local travel is unavailing. At argument, the City's counsel confessed that such a restriction presents a virtually insurmountable enforcement problem anyway. Moreover, C.R.S. §18-12-105.6 was amended by Senate Bill 25 to permit carrying a weapon in a private automobile for hunting or self defense "within a jurisdiction." This is in direct conflict with §38-117(f)(2) which would prohibit carrying a weapon in an automobile while traveling entirely within the City and County of Denver.

Given the State's detailed regulatory scheme for concealed carry of handguns, I find and conclude that the portion of DRMC §38-117(f)(2) which reads "while traveling into or through the city to or from another jurisdiction, regardless of the number of times the person stops in the city or the other jurisdiction" is in conflict with state law and is preempted by state law. Further, I find that DRMC §38-118(a)(1) is in conflict with state law where it includes the phrase "when there is a direct and immediate threat thereto." In all other respects, the City's ordinances, as amended, do not conflict with state law in this area and may coexist with state law.

I reject the State's argument that including "local law" in DRMC §38-117(f) creates a conflict with state law. The potential that the City might, sometime in the future, pass a local law in conflict with state statutes is not a reason to invalidate the ordinance now. A local law passed in the future may be read to harmonize with the state regulatory scheme. Any specific local law will need to be evaluated in context if and when it is enacted in the future.

The other conflict pointed out by the State is that state law allows guns carried lawfully in automobiles to be loaded or unloaded whereas the city ordinances require that they be unloaded except when carried for self-defense. Compare C.R.S. §§18-12-204 and 214 with DMRC §38-118(b) (3) and (4). However, the cited ordinance applies to open carry of firearms, not concealed carry without a permit. Since I conclude below that regulation of open carry is a matter of local concern, that ordinance is not preempted by the state's concealed carry statutes.

-8-

OPEN CARRYING OF FIREARMS

Section 38-117(b) of the Denver Revised Municipal Code makes it unlawful for any person "to carry, use or wear any dangerous or deadly weapon, including, but not by way of limitation, any pistol, revolver, rifle, shotgun . . . or any other dangerous or deadly weapon." It is not an offense if the person has a permit and is carrying a concealed handgun or if the person is carrying the weapon in a private automobile for hunting or self defense. Section 38-117(f)(1) and (2). Affirmative defenses to a charge of openly carrying a firearm are listed in §38-118(a) and (b) and include carrying the weapon in a person's own dwelling, place of business or own property, carrying the weapon in defense of home, person or property when there is a direct and immediate threat, for use on a hunting trip or target shooting, transportation as a collector or licensed dealer, and moving personal property from an old residence to a new residence.

State law contains no restriction on the open carrying of firearms, nor does state law expressly permit the open carrying of firearms. In Senate Bill 25, the legislature enacted C.R.S. §29-11.7-103 (2003) which purports to be a broad preemption of all local gun laws which are more restrictive than state law:

> **Regulation -- type of firearm -- prohibited**. A local government may not enact an ordinance, regulation, or other law that prohibits the sale, purchase, or possession of a firearm that a person may lawfully sell, purchase, or possess under state or federal law. Any such ordinance, regulation, or other law enacted by a local government prior to the effective date of this section is void and unenforceable.

Also included in Senate Bill 25 was a provision stating that a local government may enact an ordinance prohibiting the open carrying of a firearm in a building or specific area as long as signs are posted at the public entrances to the building or specific area. C.R.S. §29-11.7-104 (2003).

The City argues that its ordinance regulates open carrying of firearms but does not prohibit it and is therefore not in conflict with state law. Alternatively, the City argues that open carrying of firearms is a matter of purely local concern in that the unique circumstances of Denver make its local interests far outweigh any state interest in allowing open carrying of guns.

The State argues that the open carrying of firearms is a mixed state and local issue, that the State has preempted the field by enacting C.R.S. §29-11.7-103 and that the City has the option of protecting its local interests by posting signs as allowed in C.R.S. §29-11.7-104.

I reject the City's argument on statutory construction. Although the legislative history lends some support to the position, the plain language of C.R.S. §29-11.7-103 is clear and unambiguous. Under these circumstances, a court should not resort to legislative history. Town of Telluride, 3 P.3d at 37. To hold that the ordinance only *regulates* the open carrying of

firearms when on its face, it *prohibits* such open carrying except in certain limited circumstances, would be an unnatural construction of both the statute and the ordinance.

However, I agree with the City's argument that open carrying is a matter of purely local concern, at least insofar as Denver is concerned. Denver is by far the most densely populated area of Colorado. See Appendix B to Plaintiffs' Brief in Support of Motion for Summary Judgment. Denver also suffers rates of violent crime far in excess of statewide averages. Id., Appendix C. These unique factors predominate over any need for statewide uniformity or any concern about extraterritorial impact. Uniformity in itself is no virtue, Denver v. State, at 769, and uniformity in this area seems to have diminished value due to the wide diversity of localities included in Colorado. As plaintiffs stated in their opening brief: "Simply put, a bullet fired in Denver—whether maliciously by a criminal or negligently by a law-abiding citizen—is more likely to hit something or somebody than a bullet fired in rural Colorado."

Unlike the legislation for concealed carry, Senate Bill 25 fails to set forth a comprehensive regulatory scheme that serves as uniform authority for open carry of firearms. Also, unlike transportation of concealed weapons in automobiles, it should be relatively simple for a gun owner to recall that he or she may not carry a sidearm openly in downtown Denver as is possible in rural Colorado. History is also on the side of the local ordinance. Since 1973, Denver has regulated the open carrying of firearms in public. The State has been silent on the topic until Senate Bill 25. The Colorado Constitution, while protecting the right to bear arms, does not specifically commit regulation of open carrying of firearms to either state or local government. Finally, there is no apparent need for governmental cooperation to facilitate laws in this area. City of Northglenn, 62 P.3d at 156. Based on the totality of the circumstances, I conclude that the State's interest in allowing the general open carry of firearms is insubstantial and is far outweighed by Denver's local interest in regulating firearms more strictly in an urbanized area. Where the State's interest is insubstantial, a matter may be deemed one of exclusively local concern for purposes of home rule analysis. City and County of Denver v. State, 788 P.2d at 771.

I reach this conclusion despite the strong declarations of statewide interest in regulating firearms provided in Senate Bill 25. See C.R.S. 29-11.7-101 (2003). While such declarations should be afforded deference in recognition of the legislature's authority to declare public policy, they are not binding. Without more, declarations of the General Assembly do not clearly establish the significance of the State's interest in regulating open carry of firearms. Relying on the declarations alone to demonstrate the statewide interest would render the home rule amendment meaningless. The home rule amendment makes home rule municipalities superior to the General Assembly with respect to local matters. For this constitutional scheme to have any vitality, the General Assembly must do more than simply declare an interest in a regulatory matter. It must also demonstrate its interest through actual legislation related to that subject matter. Otherwise, home rule control of what has traditionally been a local matter could be usurped by the General Assembly without any showing that its interests are sufficiently significant to move the issue from one of local concern to one of mixed or statewide concern. That is, the State would merely have to declare an interest in a subject matter without actually legislating within that area of interest to render local control powerless. Such a result would nullify the purpose and intent of the home rule amendment.

-10-

For the reasons stated above, I find the State has failed to demonstrate a significant interest in requiring every city and town to allow open carry of firearms.  Thus, I conclude that the City has proved, beyond a reasonable doubt, that C.R.S. §29-11.7-103, insofar as the state relies on it to preempt the ordinances at issue here, is an unconstitutional infringement on the home rule powers of the City and County of Denver as guaranteed by Article XX, § 6 of the Colorado Constitution

ASSAULT WEAPONS/SATURDAY NIGHT SPECIALS

Denver ordinances make it unlawful to possess or sell certain types of weapons.  DRMC §38-130 outlaws "assault weapons" as defined in the ordinance.  Specifically, subsection (e) of the ordinance states:  "It shall be unlawful to carry, store, keep, manufacture, sell or otherwise possess within the City and County of Denver a weapon or weapons defined herein as assault weapons. . . ."  There are exceptions for governmental agencies and movie props, and the ordinance provides an affirmative defense for nonresidents transporting an assault weapon through the city or by persons who have a permit for the assault weapon pursuant to the ordinance.

Subsection (c) of DRMC §38-122 makes it unlawful for dealers to "sell, rent, exchange or deliver any handgun . . . knowing or having reasonable cause to believe that the basic structural components . . ." of the handgun make it what is known as a "Saturday night special."

The only state law restriction on possessing or selling certain types of firearms prohibits the sale or possession of machine guns, short shotguns and short rifles.  See C.R.S. §§ 18-12-101, 102 (2003).  However, C.R.S. §29-11.7-103, quoted above, purports to prohibit local ordinances which prohibit the sale, purchase or possession of a firearm allowable under state or federal law.

The City argues that regulation of assault weapons and Saturday night specials is a purely local issue based on the unique characteristics of Denver described above.  Further, the City's ordinance banning assault weapons has been in effect since 1989, while the sale of Saturday night specials has been banned since 1975. The State has never chosen to legislate in this area.  The State responds that this area, like all gun control, is an area of mixed state and local concern and that the state statute preempting conflicting City ordinances predominates.

I hold for the City on this issue.  Subsection (a) of the assault weapons ordinance states the City Council's findings as to why assault weapons pose a threat to the health, safety and security of the citizens of Denver and that the increasing use of assault weapons for criminal activities has resulted in a record number of related homicides and injuries to both citizens and law enforcement officers.  Like open carry, there is little need for statewide uniformity given the unique characteristics of Denver, and the impact of the ordinances on people living outside of Denver is minimal.  The exceptions under the assault weapons ban allow the legitimate transportation of weapons by nonresidents through Denver, and the ban on Saturday night specials only applies to sales by dealers within the City and County of Denver.  My evaluation of the totality of the circumstances is that Denver's interest in limiting the impact of assault

weapons and Saturday night specials in Denver far outweighs the State's insubstantial interest in uniformity of gun control laws, especially since the State has never chosen to legislate in this arena before.

For the reasons stated above, I find the State has failed to demonstrate a significant interest in requiring every city and town to allow assault weapons and Saturday night specials. Thus, I conclude that the City has proved, beyond a reasonable doubt, that C.R.S. §29-11.7-103, insofar as the state relies on it to preempt the ordinances at issue here, is an unconstitutional infringement on the home rule powers of the City and County of Denver as guaranteed by Article XX, § 6 of the Colorado Constitution

JUVENILES/SAFE STORAGE

Both state and local law restrict making any firearm available to a minor. DRMC §38-124 makes it unlawful for any person to sell, loan or furnish a firearm to a minor. There are no exceptions.

DRMC §38-131(b) reads:

> It shall be unlawful for any person to store, control or possess any firearm within or upon any premises of which that person has an ownership interest, custody or control, in such a manner that that person knows, or should know, that a minor is likely to be in possession of the firearm and in the event that the minor does, in fact, obtain possession of the firearm.

Subsection (c) of the safe storage ordinance contains exceptions for when the firearm is kept in a locked container or equipped with a trigger guard not available to the minor or when the minor obtains the firearm in a lawful act of self defense or defense of the minor's home and property.

State law similarly outlaws providing firearms to minors but permits minors to possess weapons for safety classes, hunting, target practice and similar purposes. C.R.S. §18-12-108.5 (2003).

The City argues that its regulation of possession of firearms by minors is not equivalent to the prohibition proscribed by C.R.S. §29-11.7-103. As I did above, I reject this statutory construction argument. The City also argues that restricting possession of firearms by juveniles is a local issue. The State argues that this is a mixed issue on which the state statute must predominate.

Based on the totality of the factors to be considered, I conclude that possession of firearms by juveniles is a mixed issue of state and local concern. I am unpersuaded that Denver has such unique characteristics in this area that its local interests predominate and make the state interest insubstantial. Because DRMC §38-124 lacks any exceptions, it does prohibit activities which would be permitted under state law and is therefore preempted.

However, with regard to the safe storage ordinance, §38-131, I see no conflict with state law. State law is silent on the question of safe storage, and this ordinance does not prohibit the sale, purchase or possession of any firearm as described in C.R.S. §29-11.7-103. Therefore, the safe storage ordinance is not preempted.

FIREARMS IN CITY PARKS

Since 1996 it has been unlawful for any person to possess any firearm within any Denver park, parkway, mountain park or other recreational facility. DRMC §39-9(a). State law is silent on possession of firearms in parks. The State argues that this ordinance is preempted by C.R.S. §29-11.7-103. Further, the State argues that if the City wishes to prohibit open carrying of firearms in city parks, the City may post notices at the entrances to such parks under C.R.S. §29-11.7-104.

The City argues that regulating the possession of weapons in city parks is a purely local issue and that it is unreasonable and impractical to require the City to post every entrance to its vast network of parks and parkways. Further, the ordinances apply to both concealed carry and open carry, while posting would prohibit only open carry.

The State does not object to the portion of the ordinance which prohibits the display, flourish or discharge of firearms in city parks, presumably because these restrictions are roughly consistent with state law. See C.R.S. §18-12-106(1)(a) and (b) (2003).

On this issue, the City's argument is supported by state law. C.R.S. §31-25-201 (2003) grants the City authority to establish, maintain and acquire lands for parkways, parks or recreational purposes. More specifically, in C.R.S. §31-25-216 (2003), a city and county is granted full police power and jurisdiction over extraterritorial parklands, of which Denver has a substantial collection. The State has not sought to regulate the City's policing of its own parks until the enactment of Senate Bill 25. Denver's park system is unique to it, especially with regard to its extensive system of mountain parks and parkways. Any need for uniformity is vastly outweighed by Denver's judgment that its citizens are safer without guns in the parks. There is no extraterritorial impact to this ordinance. Commuter routes typically do not traverse parklands, and it is not an unreasonable burden for visitors to Denver to inform themselves as to restrictions on guns in parks. The State has not shown any substantial interest in requiring a municipality to open its parks to all guns; as described above, the bare interest in uniformity is unconvincing. Therefore, based on the totality of the circumstances, I conclude that the issue of open carry of firearms in parks is one of exclusive local concern. To the extent that C.R.S. §29-11.7-103 purports to preempt the Denver ordinance as it prohibits open carry in parks, I find beyond a reasonable doubt that it is unconstitutional.

However, the City's local concern for policing its own parks collides with the statewide statutory scheme governing carrying concealed handguns with a permit. The City has admitted that concealed carry is an area of mixed state and local concern. As stated above, the State's creation of uniform regulations on concealed carry predominates. Since the ordinance

-13-

prohibiting all firearms in parks conflicts with the state statutes on concealed carry, the ordinance is preempted by state law only as to concealed handguns carried with a permit.

CONCLUSION, DECLARATION AND INJUNCTION

Based on the foregoing conclusions of law, I hereby order as follows:

1. DRMC §§38-117(a), 38-117(f) and 38-118, insofar as these ordinances regulate the carrying of firearms in automobiles without a permit, are preempted by C.R.S. §§18-12-204(2)(a), 18-12-214(1)(a) and 18-12-105.6 (2003) to the extent their language is more restrictive than state law as described above. These ordinances remain valid and enforceable in all other respects.

2. DRMC §§38-117(b) and 38-118, insofar as these ordinances regulate the open carrying of firearms, remain valid and enforceable by the City and are not preempted by C.R.S. §29-11.7-103 (2003).

3. DRMC §38-130, concerning assault weapons, remains valid and enforceable by the City and is not preempted by C.R.S. §29-11.7-103 (2003).

4. DRMC § 38-122(b) and (c), prohibiting the sale of Saturday night specials, remains valid and enforceable by the City, and is not preempted by C.R.S. §29-11.7-103 (2003).

5. DRMC § 38-124, insofar as this ordinance prohibits the furnishing of firearms to minors without exceptions, is preempted by C.R.S. §18-12-108.5 (2003).

6. DRMC §38-131, concerning the safe storage of firearms, remains valid and enforceable by the City and is not preempted by C.R.S. §18-12-108.5 or §29-11.7-103.

7. DRMC §39-9 prohibiting firearms in parks:

    A. Remains valid and enforceable by the City in regard to all firearms other than concealed handguns carried with a permit, and is not preempted by C.R.S. §29-11.7-103 (2003);

    B. Is preempted in regard to concealed handguns carried with a permit by C.R.S. §§18-12-204(2)(a), 18-12-214(1)(a) and 18-12-105.6 (2003).

8. Since the State has conceded the continuing validity and enforceability of the following City ordinances and regulations, these ordinances remain valid and enforceable and are not preempted by C.R.S. §29-11.7.103 (2003) or other state statutes:

      A.      DRMC §14-92, concerning firearms in vehicles, presumption of possession;

      B.      DRMC §38-117(c), concerning the display and flourishing of firearms;

      C.      DRMC §38-121, concerning the firing and discharge of weapons;

      D.      DRMC §38-123, concerning identification and records of weapons sales;

      E.      DRMC §38-124, insofar as this ordinance prohibits the furnishing of firearms to intoxicated persons and others;

      F.      DRMC §42-137, concerning the carrying of firearms by licensed security guards;

      G.      DRMC §59-80(6)(c)(1), concerning the sale of firearms by licensed dealers in residential zone districts;

      H.      Career Service Authority Rules 15-110(A) and 16-50(A)(6), concerning the unauthorized carrying of firearms by City employees; and

      I.      Manager of Aviation Rules 20.09 and 20.10, prohibiting firearms in restricted areas of the airport.

9. The State is and shall be permanently enjoined from enforcing against the City the preemptive language of the statutes adopted or amended by SB 03-24 and SB 03-25, or from otherwise interfering with Denver's enforcement of the City ordinances and regulations set forth above in paragraphs 2, 3, 4, 6, 7A and 8A through 8I on the basis of these statutes.

10. Any and all claims related to DRMC §38-125 shall be dismissed due to the fact that this ordinance was repealed after the institution of this action by the City.

SO ORDERED.

Dated this 5th day of November, 2004.

BY THE COURT:

_____
Joseph E. Meyer III
District Court Judge

cc:  David Broadwell, Assistant City Attorney, Attorney for Plaintiffs
     Robert Dodd, Assistant Attorney General, Attorney for Defendants

Case 1:10-cv-00059-WDM-MEH Document 33-5 Filed 12/09/10 USDC Colorado Page 17 of 17