# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 10cv-00059-WDM-MEH

GRAY PETERSON,

    Plaintiff,

v.

ALVIN LACABE, individually and in his official capacity as Manager of Safety for the City and County of Denver,

    Defendant,

JOHN W. SUTHERS, Attorney General for the State of Colorado,

    Intervenor.

## AFFIDAVIT OF DETECTIVE MICHAEL OSTRANDER

I, Michael Ostrander, being duly sworn, state as follows:

1. I am over the age of eighteen.

2. I have personal knowledge of the matters set forth herein.

    a. I am employed as a Detective in the Sheriff's Office of Adams County, Colorado.

    b. My job title is Concealed Handgun Permit Background Investigator. I have been employed in this capacity since 2003.

3. In my capacity as Concealed Handgun Permit Background Investigator, I am responsible for conducting background checks for CHP applicants under § 18-12-201, C.R.S. (2010).

4. The Adams County Sheriff's Office accepts CHP applications two days a week. In addition to participating in a face-to-face interview, applicants must present:

   a. a Colorado driver's license or state-issued identification card,

   b. evidence of United States citizenship,

   c. proof of training,

   d. if the applicant has served in the military, a copy of the relevant DD214 form.

5. Processing of a CHP application begins with the collection of the applicant's fingerprints, which my unit forwards to the Colorado Bureau of Investigation's InstaCheck unit. After processing the fingerprints, CBI runs the identity of the applicant through national databases such as NICS, NCIC, and III. Occasionally, this search reveals that the applicant is disqualified from purchasing or possessing a firearm under state and/or federal law. After it is complete, CBI informs my office of the results of the InstaCheck search, and classifies the applicant as "eligible to possess forearms", "May be Ineligible to Possess Firearms", or "Prohibited from Firearms Possession".

6. Although the InstaCheck service provided by CBI is helpful, I rely on many other sources of information in making a final determination that a CHP applicant is (or is not) qualified under state law to carry a concealed weapon. I take these extra measures because, through my extensive experience as a law enforcement officer and background

2

investigator, I have learned that nationwide databases are often incomplete and inaccurate.

7. Accordingly, in addition to conferring with CBI, my office sends faxes or teletypes to law enforcement agencies in jurisdictions where an applicant reports previous residence, requesting information on "official" contacts. Depending on time restrictions, I attempt to reconstruct ten years of an applicant's history.

8. Access to information in locally-maintained databases is absolutely critical to accurately assessing a CHP applicant's qualifications. Some agencies, whether in Colorado or other states, do not prosecute misdemeanor crimes of violence or drug/alcohol abuse cases in State or County courts. Even if suffered in municipal court, convictions of this type would disqualify an individual from possessing a CHP under Colorado law. Nonetheless, municipal court convictions are virtually never reported to statewide or national databases.

9. Locally-maintained databases also contain other information that may influence my decision as to a CHP applicant's qualifications under Colorado law. For example:

   a. Mental health contacts often do not result in arrest but may still be indicators of possible suicidal tendencies or behavioral problems that may make the applicant a danger to himself or others;

   b. A history of aggressive driving tendencies can be an indicator of the same concern;

3

c. Even 911 records can raise red flags. On some occasions I have reviewed Adams County 911 records and discovered a history of domestic or other violent contacts that do not result in arrest;

d. Juvenile arrest records, which can be a disqualifying factor under Colorado law, are often not available from other states;

e. Plea agreements that result in deferred sentences and diversion-type programs do not appear on national databases as a prosecuted crime. These records also usually do not differentiate between deferred sentences and deferred judgments. This is a critical difference when determining eligibility for a CHP.

10. My access to various Colorado databases allows me to screen for these issues for resident CHP applicants. My lack of access to this type of information held by other states would make it more or less impossible to effectively conduct this type of screening for non-resident CHP applicants.

11. My ability to check into the background of applicants who have lived in other states is variable, but in virtually every case is less than ideal. I do not have access to local databases that are maintained in other states, so unless local agencies are cooperative, or if information has been reported to nationwide sources such as NCIC, it is unavailable to me. Although I routinely contact local law enforcement agencies in states where the applicant reports having previously resided, my experience is that out-of-state agencies are often unwilling to assist. Law

4

enforcement agencies in California, for example, routinely refer our requests to the California Department of Justice. Like the CBI, the California Department of Justice does not maintain information on all contacts made with local law enforcement personnel. In many cases, what I learn of these contacts bears heavily on whether an applicant is qualified for a CHP under Colorado law.

a. As an example of the above, I once processed an application for a former United States Marine who had been previously stationed in California. I contacted the police department in the California town where he had been stationed and was referred to the California Department of Justice. The California Department of Justice reported only a single DUI-related contact. However, when I searched further, I learned that the applicant had been involved in multiple alcohol-related incidences of domestic violence. These were not reported to California's database because, rather than formally booking or prosecuting the applicant, local authorities had simply turned him over to the military.

b. Although critical to my decision to deny the CHP application, this type of information takes an extraordinary amount of research to find. Although it is possible to devote our office's limited resources to this type of research on select occasions, the need to do so is rare due to Colorado's residency requirement. This would not be the

5

case if our office were required to process applications from non-residents.

12. Cost is another issue. By statute, our office can charge no more than one hundred dollars for processing a CHP application. Some states, however, refuse to provide background information without payment of additional fees. Because the one hundred dollar fee does not even cover the full cost of processing the application, our office would be unable to effectively confirm the eligibility of CHP applicants who happened to reside in states that charge fees for the provision of background information.

13. In my opinion, the statutory requirement that CHP applicants be residents of Colorado is absolutely critical to ensuring that CHPs be issued to individuals who qualify under Colorado law and will not be a danger to themselves or others. If I were required to process CHP applications from non-residents, I do not believe that I could consistently ensure their eligibility to carry a concealed weapon under Colorado law.

14. A final consideration is that Colorado Revised Statutes require completion of a CHP investigation within 90 days. Out of state agencies have been, in my experience, very slow in responding to our requests for information, even after repeated requests.

FURTHER AFFIANT SAYETH NAUGHT

STATE OF COLORADO )
) SS.
COUNTY OF ADAMS )

_____
Detective Michael Ostrander

Subscribed and sworn before me on this 7th day of December, 2010.

_____
NOTARY PUBLIC

My Commission Expires: My Commission expires Aug. 23, 2012