# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

CIVIL ACTION FILE NO.  10-CV-59-WDM-MEH

GRAY PETERSON,
    Plaintiff,

v.

ALVIN LACABE, in his official capacity as Manager of Safety for the City and County of Denver,
    Defendant,

and

JOHN W. SUTHERS, Attorney General for the State of Colorado,

    Intervenor.

## PLAINTIFF'S REPLY TO INTERVENOR IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT

**Argument**

**I.  Colorado and Denver Law Deprive Plaintiff of the Right to Bear Arms**

Suthers asserts that Plaintiff's right to bear arms is not infringed because 1) Colorado only bans concealed carry, which Suthers asserts is not a protected right; and 2) Suthers alleges that Plaintiff can bear arms "in all locations protected by the Second Amendment." Suthers glosses over the combined effect of Denver and Colorado law and misstates the reach of the Second Amendment.

As noted in Plaintiff's opening brief, Colorado law prohibits the carrying of a concealed firearm outside of one's own dwelling, place of business, or a private automobile without a permit to carry a concealed handgun ("CHL"). C.R.A. § 18-12-105. Denver prohibits the carrying of a

concealed firearm outside one's dwelling or place of business without a CHL. Denver Ord. 38-117(a). Denver further prohibits the carrying of a firearm at all (i.e., openly or concealed) outside one's dwelling or place of business without a CHL. Denver Ord. § 38-117(b). Both because of Colorado law (requiring Colorado CHL applicants to be Colorado residents) and because of Defendant's actions (denying Plaintiff's CHL application), Plaintiff cannot obtain a Colorado CHL.

Plaintiff has no dwelling or place of business when he visits Colorado and he does not use private automobiles for transportation.[1] Plaintiff concludes, therefore, that he is "disarmed while in Denver" [Doc. 17, p. 5] and he is unable to carry a firearm "anywhere in the city." Doc. 17, p. 10. Suthers disputes these conclusions, saying Plaintiff "may carry a pistol in his dwelling, his place of business, any property he owns or controls, in private automobiles, and for defense of an immediate threat to home, person, or property," [Doc. 33, p. 16] without regard to the fact that Plaintiff has none of those in Colorado.

Suthers concedes that Plaintiff has no place of business in Colorado. Doc. 33, p. 3. Suthers claims that Plaintiff has a dwelling in Colorado [Doc. 33, p. 4], but he offers no evidence to support this fact. Plaintiff, on the other hand, has filed a declaration that he does not have a dwelling in Colorado. Doc. 17-1, ¶ 6.

Suthers offers no explanation how Plaintiff could use a firearm in self-defense if Plaintiff is unable to carry one in the first place. More importantly, however, Suthers fails to explain his

---

[1] Suthers calls Plaintiff's assertion that he has no dwelling in Colorado "simply incorrect." Doc. 33, p. 4. Suthers offers no proof to the contrary, however, and does not allege (either with or without evidence) where he believes Plaintiff's Colorado dwelling is. Suthers' unsupported statement of fact cannot be considered by this Court.

sweeping conclusion that Plaintiff is allowed to carry a firearm in every place required by the Second Amendment. Even assuming, *arguendo,* that Plaintiff has a dwelling in Colorado, the Second Amendment clearly guarantees the right to carry a firearm in more places than one's own dwelling.

The Supreme Court ruled in *Heller* (cited in Plaintiff's opening brief) that the right to "bear" arms in the Second Amendment is the right to "carry" arms, but cautioned that prohibitions on carrying in sensitive places such as government buildings and schools are "presumptively" lawful. Suthers implies, without asserting or supplying any reasoning, that Colorado's and Denver's restrictions on carrying in ***every other place*** besides Plaintiff's "dwelling" also are presumptively lawful. In other words, Suthers is arguing that every place in Denver besides Plaintiff's "dwelling" is a "sensitive place."

Surely if the Supreme Court would have intended for every place to be "sensitive," it would have said so. By singling out schools and government buildings, the Supreme Court implied that most other places undoubtedly are not sensitive, even if a few other places are. There is no reason to infer that every bank, restaurant, shop, office, park, city sidewalk and public street also are sensitive places and therefore presumptively lawful for the government to ban firearms.

The Supreme Court ruled in *Heller* that the purpose of the Second Amendment was to "guarantee the individual right to possess and carry weapons in case of confrontation." 128 S.Ct. 2783, 2797 (2008). Nothing in *Heller* or *McDonald* indicate the Court confined this central holding to confrontations in the home, or to just dwellings, places of business, and personal automobiles. Indeed, the most logical reading of this passage, taken with the "sensitive places" language,

indicates the Supreme Court thought the Second Amendment guarantees the right to carry arms in case of confrontation *anywhere* except for the few places found to be "sensitive." Suthers turns this reading on its head by implying that everyplace except a dwelling, place of business, or private automobile is a sensitive place, and thus not protected for carrying of arms.

Suthers' own advocacy in *McDonald* belies this argument. In an *amicus curiae* brief that Suthers filed in the Supreme Court in the *McDonald* case, Suthers argued:

> Accordingly, the States have an interest in ensuring that citizens who must travel in the course of their personal or professional lives remain free from unconstitutional arrest and prosecution for engaging in their right to self-defense by carrying properly-licensed weapons. If local governments may completely ban possession of handguns – the most popular weapon chosen by Americans for self-defense – citizens of all the States may find that they are unable to travel to certain jurisdictions unless they are willing to forego their Second Amendment rights.

Brief of States *Amicus Curiae,* p. 2 (filed contemporaneously with this Reply for the Court's convenience). Either Suthers was disingenuous to the Supreme Court when he made that argument, or he is being disingenuous to this Court now, for he certainly is satisfied now that it is permissible for Denver and Colorado to require Plaintiff to leave his Second Amendment rights in Washington when Plaintiff travels to Colorado.

IA.  The Fundamental Nature of the Right to Bear Arms

Suthers attempts to downplay the fundamental nature of the right to bear arms, as established by *Heller,* by focusing on the bearing of *concealed* arms. Suthers does not consider that while Colorado law only requires a CHL to carry concealed, Denver law requires a CHL even to carry openly. Thus, Plaintiff is barred by the combined effect of Colorado and Denver law from carrying firearms *at all.* Suthers creates the straw man of concealed carry as a fundamental right and then

–4–

attacks the straw man by pointing to authority that concealed carry bans are permissible. The problem with Suthers' argument, of course, is that Plaintiff's complaint is that he cannot bear arms at all (i.e., openly or concealed) in Denver without a CHL. While residents of Colorado and most other states can either obtain a Colorado CHL or one from their home states recognized by Colorado, Plaintiff can do neither (as a resident of Washington). Plaintiff is treated differently solely because of his Washington residency.[2]

IB. The Scope of the Second Amendment

Suthers next attacks the applicability of the Second Amendment to the facts of this case by shockingly declaring that "nothing in *Heller* or *McDonald* credibly suggests that the core Second Amendment right extends beyond the home's four walls." Doc. 33, p. 17. Aside from the fact that Suthers once again has forgotten his own advocacy as an *amicus curiae* at the Supreme Court, Suthers also overlooks that the Court found that Second Amendment "guarantee[s] the individual right to possess ***and carry*** weapons in case of confrontation." *Heller,* 128 S.Ct. at 2797 [Emphasis supplied]. Surely Suthers does not suggest that all the Second Amendment does is guarantee the right to carry within the four walls of the home. If the Supreme Court intended to limit the "and carry" part of its statement to within the home only, it easily could have done so. The fact that it did not do so and the fact that it later discussed the permissibility of restricting carrying in "sensitive places" such as schools and government buildings lead to the inescapable conclusion that the Court announced a guarantee to carry arms that extended far beyond the short walk from bedroom to living

---

[2] Plaintiff's attorney, a Georgia resident with a Georgia CHL, is free to carry his firearm when he meets Plaintiff in Denver, but Plaintiff is completely disarmed, despite having CHLs from

–5–

room.

## II.  The Correct Standard of Review for This Second Amendment Case is Strict Scrutiny

A recent Fourth Circuit decision helps explain why Suthers' proposed standard of review is in appropriate.  First, the Fourth Circuit joined other circuits in ruling that Second Amendment cases should be reviewed analogously to First Amendment cases.  *United States v. Chester,* 2010 U.S. App. LEXIS 26508, 24, No. 09-4084 (4th Cir. December 30, 2010) ("[W]e agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment"), *citing* cases from the Third and Seventh Circuits.  Second, the *Chester* court determined that "severe burdens" on the Second Amendment right should be subject to strict scrutiny, and that lesser burdens should be subject to intermediate scrutiny.  *Id.* at 26.  Because Plaintiff in the instant case has been completely disarmed in Denver, his Second Amendment rights have been eradicated and strict scrutiny must therefore apply.

Even assuming *arguendo* that an intermediate scrutiny should be applied, the form of intermediate scrutiny that would apply is very different from what Suthers urges.  The *Chester* court explained that intermediate scrutiny in Second Amendment cases means there must be "a reasonable fit between the challenged regulation and a substantial government objective." *Id.* at 27.  Defendant LaCabe's actions and the Colorado law cannot pass that test, as explained below in Part IV.

## III.  Defendant Unlawfully Burdens Plaintiff's Right to Travel

Suthers creates a non-existent legal test in an effort to avoid strict scrutiny.  He asserts that the standard of review applied to right-to-travel cases is dependent on what section of the

---

multiple states.

Constitution provides support for the specific right to travel in a particular case. There is no such test. As Plaintiff noted in his opening Brief, the Supreme Court itself has said that, while there is no doubt the right to travel exists, "The textual source of the constitutional right to travel … has proved elusive." *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, 902 (1986). It is unclear why Suthers believes the source for the right provides the applicable standard of review when the Supreme Court itself says the source of the right is undetermined.

Plaintiff explained in his opening Brief why strict scrutiny should be applied, but Suthers urges an intermediate scrutiny of "a substantial reason for the difference in treatment" and a "substantial relationship" between the discriminatory treatment and the State's objective. Doc. 33, p. 9. Even if this test applies, however, Defendant cannot meet that burden.

### IV. The Unavailability of Local Information Cannot Meet Strict or Intermediate Scrutiny

Suthers attempts to justify Colorado's refusal to issue CHLs to nonresidents based on a single factor: the relative unavailability of information about nonresidents compared to residents. There are multiple flaws with Suthers assertion. First, there is no statutory or case law indicating that this asserted reason actually is the compelling state interest behind the discrimination. Suthers merely asserts it by fiat.

Second, Suthers assumes that any Colorado resident is a long-time Colorado resident about which the state (and the county) has compiled substantial information. This assumption overlooks, however, that the residency test is not dependent on any length of residency. Colorado law forbids issuance of a CHL to Plaintiff because Plaintiff is not a resident of Colorado, but nothing in the law would prohibit Plaintiff from obtaining a CHL if Plaintiff moved to Colorado today. If Plaintiff

were a brand new resident of Colorado today, the sheriff to whom Plaintiff applied for a CHL would have available to him exactly the same amount of information about Plaintiff that was available yesterday. Plaintiff's one-day-old residency would do nothing to further the sheriff's data about Plaintiff, because there is no "local" information about Plaintiff that Suthers claims is so vital. Thus, the residency test is little help in advancing what Suthers asserts is an important governmental interest.

Third, Suthers overlooks the fact that Colorado provides reciprocity to CHL holders of over half the states.[3] Nothing in Colorado's reciprocity provisions restrict reciprocity to states that perform or consider any kind of "local" databases or municipal court violations. Colorado law, in fact, is indifferent to the existence, use, or accuracy of the databases or other sources of information used by reciprocal states in the conduct of background checks for the other states' issuance of their own CHLs. Thus, Suthers' asserted governmental interest in protecting the public by allowing the carrying of firearms only by people known by Colorado to be law abiding is fallacious. The majority of people Colorado allows to carry firearms (the CHL holders of the many states listed in FN 2) are strangers to Colorado. Suthers simply cannot with a straight face represent to this Court that the availability of local information is so vital to the safety of the people of Colorado that Colorado law allows people from over half the states in the Union to carry firearms without regard to

---

[3] According to the website of the Colorado Department of Public Safety, Colorado Bureau of Investigation, Colorado honors CHLs from Alabama, Alaska, Arizona, Arkansas, Delaware, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Michigan, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New Mexico, North Carolina, North Dakota, Oklahoma, Pennsylvania, South Dakota, Tennessee, Texas, Utah, and Wyoming. http://cbi.state.co.us/ic/Reciprocity.html

the availability of local information for those people.

Moreover, while Colorado restricts its reciprocity to CHLs issued by other states to those states' own residents, Colorado law still withholds reciprocity to a person who moves out of the state of issue, even if the state of issue considers the license to be valid. For example, Georgia requires its CHL applicants to be Georgia residents [O.C.G.A.§ 16-11-129], but nothing in Georgia law invalidates a Georgia CHL if the holder moves out of Georgia. This means that Colorado recognizes a Georgia resident's CHL until the day the Georgia resident moves to Tennessee. Although the Georgia CHL remains valid until it expires, Colorado ceases to recognize it.[4] Thus, even though Georgia issued the CHL to its own resident, and theoretically had available to it the local information Suthers finds so valuable, Colorado law ceases to recognize the Georgia CHL *after issuance* if the holder moves out of state.

Ironically, even though Colorado law restricts issuance of CHLs to Colorado residents, nothing in Colorado law invalidates those Colorado CHLs when a Colorado resident moves out of state. If Plaintiff were to become a Colorado resident, obtain a CHL, and then move back to Washington, Plaintiff's Colorado CHL would continue to be valid, despite the lack of the availability of local information when the CHL were issued and the continuing lack of local information after the CHL were issued..

Fourth, Suthers overlooks that Plaintiff's CHL application was denied by Defendant LaCabe

---

[4] Plaintiff is cognizant of the fact that the Court has dismissed Plaintiff's attack on Colorado's reciprocity system. Plaintiff raises this point not to attack the reciprocity system, but to illustrate that Colorado's law does not truly value the availability of local information the way Suthers would have this Court believe.

and not by some other Colorado sheriff (such as the sheriff from Adams County). Defendant LaCabe has not introduced any evidence that the lack of local information for Plaintiff played any role in his denial of Plaintiff's CHL application. LaCabe has not stated that he checked to see if Plaintiff ever lived in Colorado, if LaCabe could get any local information about Plaintiff from Washington[5] or any other source, or anything else regarding the availability (or lack thereof) of local information. Instead, LaCabe has given no indication that Plaintiff's lack of state residency was not the sole reason for LaCabe'e denial of Plaintiff's application. Moreover, the Adams County evidence that Suthers introduced shows that Adams County has successfully obtained "local information" from other states. Thus, the lack of availability of local information about Plaintiff cannot be said to be a reason for LaCabe's denial.

**Conclusion**

Suthers has failed to rebut Plaintiff's showing that Plaintiff is entitled to judgment as a matter of law for the infringement of his fundamental rights as discussed in Plaintiff's opening Brief. For this reason, Plaintiff's Motion should be granted.

      /s/ John R. Monroe
John R. Monroe
Attorney for Plaintiff
9640 Coleman Road

---

[5] The Washington State Patrol makes criminal history information for Washington Residents readily available for a $10 per person fee on its website http://www.wsp.wa.gov/crime/crimhist.htm .

        Roswell, GA  30075
        678 362 7650
        [John.monroe1@earthlink.net](mailto:John.monroe1@earthlink.net)

## **CERTIFICATE OF SERVICE**

I certify that on January 12, 2010, I filed the foregoing using the ECF system, which automatically will send copies electronically to:

>Linda M. Davison
>Attorney for Defendant LaCabe
>Assistant City Attorney
>Denver Dept. of Human Services
>1200 Federal Blvd., 4th Floor
>Denver, CO  80204
>720-944-2626
>Linda.davison@denvergov.org


>Matthew D. Grove
>Attorney for Attorney General Suthers
>Assistant Attorney General
>State Services Section
>303-866-5264
>matthew.grove@state.co.us




>     /s/ John R. Monroe
>John R. Monroe