IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 10-cv-00059-WDM-MEH

GRAY PETERSON,

          Plaintiff,

v.

ALVIN LACABE, in his official capacity as Manager of Safety for the City and County of
Denver,

          Defendant,

JOHN W. SUTHERS, Attorney General for the State of Colorado,

          Intervenor.

---

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

---

Miller, J.

          This case is before me on Plaintiff's Motion for Summary Judgment against

Defendant LaCabe (ECF No. 17) and Intervenor Attorney General's Cross-Motion for

Summary Judgment (ECF No. 34).[1]  I have reviewed the pertinent portions of the record

and the legal authorities and arguments contained in the parties' briefs.  For the reasons

that follow, Plaintiff's Motion for Summary Judgment will be denied and the Attorney

---

[1]The briefing in this case is in a somewhat unusual posture.  Plaintiff's motion
was filed before the Attorney General intervened as a party.  I resolved the motion in
part by denying LaCabe's procedural defenses, see October 20, 2010 Order (ECF No.
26), and in the same order permitted the Attorney General to intervene.  Because
Defendant LaCabe did not respond to the merits of Plaintiff's motion for summary
judgment, I reserved ruling on the substantive issues presented.  The Attorney General
thereafter assumed the defense of Defendant LaCabe by addressing Plaintiff's
challenges on the merits in a response brief.  The Attorney General also filed his own
motion for summary judgment.

General's Cross-Motion for Summary Judgment will be granted.  I conclude that the statute

at issue does not violate Plaintiff's constitutional rights.

<u>Background</u>

Plaintiff alleges that Colorado's state statutes regarding permits to carry concealed

handguns, C.R.S. § 18-12-201 *et seq.*, are unconstitutional as applied to him.  Specifically,

Plaintiff alleges that the statute requiring an applicant for a permit to carry a concealed

handgun be a resident of the state violates the Privileges and Immunities Clause of the

United States Constitution, the Second Amendment of the United States Constitution, and

the Fourteenth Amendment of the United States Constitution.

In general, it is unlawful to carry a concealed firearm in the State of Colorado without

a license.  C.R.S. § 18-12-105.  The law contains several exceptions, most relevant here

are for "[a] person in his or her own dwelling or place of business or on property owned or

under his or her control at the time of the act of carrying" and for "[a] person in a private

automobile or other private means of conveyance who carries a weapon for lawful

protection of such person's or another's person or property while traveling."  C.R.S. § 18-

12-105(2)(a) & (b).

Authority to issue concealed handgun permits is granted to the county sheriffs.

C.R.S. § 18-12-203.  The statute provides that "except as otherwise provided in this

section, a sheriff shall issue a permit to carry a concealed handgun to an applicant who .

. . (a) Is a legal resident of the state of Colorado."  C.R.S. § 18-12-203 (1).  Other

application criteria include age and evidence of competence with a handgun; in addition,

the applicant must not be disqualified by any ineligibility factors such as criminal

convictions, chronic use of alcohol or controlled substances, or being the subject of a

protection order.  *Id*.  The statute further provides that the sheriff <u>shall</u> "deny, revoke, or refuse to renew a permit if an applicant or a permittee fails to meet one of the criteria listed . . . ." C.R.S. § 18-12-203 (3).

The Attorney General presents evidence concerning the methods used to verify an applicant's eligibility for a permit.  Michael Ostrander, a detective from the Sheriff's Office of Denver County, Colorado, works as a concealed handgun permit background investigator and provides an affidavit regarding his background checks.   Exh. A to Intervenor's Resp., ECF No. 33-1.  He states that applicants must submit to a face-to-face interview, present a Colorado driver's license or identification card, evidence of citizenship, proof of training, and, if the applicant has served in the military, copy of the relevant DD214 form.  *Id*. ¶ 4.  Fingerprints are collected, which are forwarded to the Colorado Bureau of Investigation ("CBI").  *Id*. at ¶ 5.  The CBI processes the fingerprints and runs the identity of the applicant through national and other databases.  *Id*.  Detective Ostrander states, however, that nationwide databases are often incomplete and inaccurate and so he supplements the CBI background check by requesting information from law enforcement agencies in jurisdictions where an applicant reports previous residence.  *Id*. at ¶¶ 6-7.  He emphasizes that much of the pertinent information from the local sources, including misdemeanor crimes or official contacts resulting from drug and alcohol abuse, is not available in national databases.  *Id*. at ¶ 8.  Local databases also contain information about mental health contacts, aggressive driving tendencies, 911 calls indicative of domestic violence or other violent contacts not resulting in arrest, juvenile arrest records, and plea agreements, any of which could disqualify an applicant for a permit.  *Id*. at ¶ 9.  He asserts that he does not have access to these local databases in jurisdictions outside of the state

3

and local agencies are not always cooperative in providing assistance. *Id.* at ¶ 11. He provides specific examples of difficulties he has had obtaining information regarding residents who previously lived in other states from those local authorities. *Id.* Detective Ostrander also explains that out-of-state jurisdictions sometimes charge for providing background information, but funds available for processing applications are limited, only $100 per application. *Id.* at ¶ 12. He also explains that the statute requires a background check to be completed within 90 days but out-of-state jurisdictions are slow in responding to information requests. *Id.* at ¶ 14.

The Attorney General also provides an affidavit from James Spoden, who is an InstaCheck Data Supervisor at the CBI. Exh. B to Intervenor's Resp., ECF No. 33-2. Mr. Spoden explains that the CBI's background check involves access to five state and national databases, including the FBI's National Instant Criminal Background Check System ("NICS"), the Integrated Colorado Online Network ("ICON"), National Crime Information Center ("NCIC"), the Colorado Crime Information Center ("CCIC"), and the Interstate Identification Index ("III"). *Id.* at ¶ 8. He asserts that many important records relevant to the background check are maintained only at the state level and are available only to state and local authorities. *Id.* at ¶ 9. While he has access to the databases for Colorado, he does not have the ability or authorization to access the criminal justice or judicial databases of other states. *Id.* at ¶ 10. Therefore, he would not be able to obtain certain information about a non-resident whose history might disqualify him or her from obtaining a handgun permit. *Id.* at ¶ 11. He notes also that in Colorado, fingerprints of concealed permit holders are flagged in the CCIC, which permits the issuing agency to be immediately notified of an arrest of a permittee. *Id.* at ¶ 12. This assists in ensuring the ongoing eligibility of permit

4

holders; however, the state would not have that same ability to monitor non-state residents for law enforcement contacts outside of Colorado, where they would be more likely to occur.  *Id.* at ¶ 12.

Pursuant to reciprocity principles, Colorado will recognize certain concealed handgun permits issued by other states.  C.R.S. § 18-12-213.  Plaintiff is a resident of Washington and has a permit issued by the State of Washington but Washington is not among the states with which Colorado grants reciprocity.  Plaintiff also has a permit issued by Florida; however, under the statute, Colorado does not recognize permits issued by a state to a non-resident of that state.  C.R.S. § 18-12-213(1)(b)(I).

In addition, the City and County of Denver has a municipal ordinance that generally prohibits open carry of a firearm or other weapon.  Denver Code § 38-117(b).  Denver requires a permit for carrying a concealed weapon, consistent with the state statute.  Denver Code § 38-117(a) and (f).  The prohibition on concealed or open carry, however, does not apply if the person "is carrying the weapon concealed within a private automobile or other private means of conveyance, for hunting or for lawful protection of such person's or another person's person or property, while travelling [sic]."  Denver Code § 38-117(f)(2).  It is also an affirmative defense if the weapon is carried by a person "in his or her own dwelling, or place of business, or on property owned or under such person's control at the time of carrying such weapon."  Denver Code § 38-118(a).  Plaintiff does not challenge the municipal regulations but argues that the combined effect of the state and city laws means that he is unable to carry any handgun anywhere within the city limits of Denver, whether open or concealed, because he has no private vehicle or dwelling.

On or about June 2, 2009, Plaintiff filled out an application in Denver County for a

Colorado concealed handgun permit.[2]  Defendant LaCabe is the Manager of Safety for the City and County of Denver and acts as the sheriff of Denver County.  On or about July 2, 2009, Defendant LaCabe sent Plaintiff a letter notifying Plaintiff that Plaintiff's application was denied because Plaintiff was not a Colorado resident.

Plaintiff's lawsuit, filed pursuant to 42 U.S.C. § 1983, asserts several claims for relief. Plaintiff seeks, *inter alia*, an injunction "prohibiting Defendants from denying nonresidents of Colorado the right to apply for an obtain a [concealed handgun permit], solely on account of their non-resident status."  Amended Complaint (ECF No. 4) at ¶ 62.  He also seeks an injunction "requiring Defendants to give reciprocity and recognition to [concealed handgun permits] issued by other states to nonresidents of such states . . . ."  *Id.* at ¶ 64.  However, there is no proper defendant[3] with authority to modify the state's rules regarding reciprocity and Plaintiff does not address any arguments to this aspect of the regulations.  Therefore, I conclude that Plaintiff has abandoned his challenge to Colorado's permit regime to the extent it concerns reciprocity issues.

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict

---

[2]The parties have stipulated to the facts concerning Plaintiff's application for a permit and the denial of that application.

[3]The only state defendant named in Plaintiff's pleadings was Peter Weir, who was dismissed on Eleventh Amendment immunity grounds and because he had no authority to implement or modify the state's reciprocity regime.  See October 20, 2010 Order, ECF No. 26.  Plaintiff has not sought to name an alternative defendant.

for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

Plaintiff's arguments indicate that he is challenging the concealed handgun licensing regulations as applied to him.  In particular, he challenges the law as it applies to him when he is visiting Denver, because of the municipality's prohibition on open carry.  Nonetheless, because of the broad relief he seeks, at least part of his arguments appear to be premised on the principle that the statute is unconstitutional on its face in all applications.  "Facial challenges are disfavored[,]" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, (2008), and generally fail if any "set of circumstances exists under which the [law] would be valid," *id.* at 449.  In other words, to succeed on a facial challenge, Plaintiff must show that the law is unconstitutional in all of its applications. *United States v. Salerno,* 481 U.S. 739, 745 (1987).

<u>Discussion</u>

Plaintiff broadly challenges the residency requirement for a concealed handgun license on three constitutional grounds: (1) the Privileges and Immunities Clause; (2) the Second Amendment; and (3) the Equal Protection Clause.  I will address the arguments and applicable law for each in turn.

7

1.    Privileges and Immunities/Right to Travel

Defendant argues that the ban on issuing concealed weapons licenses to non-residents means that he "is prohibited from engaging in an activity that residents of Colorado (and many other states) are permitted to do." Pl.'s Mot. for Summ. J., ECF No. 17, at 5.   He argues that he is therefore "penalized when he travels to Denver (and all of Colorado)," which violates his constitutional right to travel.   *Id.* at 6.[4]   Plaintiff further contends that a fundamental right is abridged by this regulation and so it must be examined under a strict scrutiny standard of review.   I disagree.

Although not expressly provided for in the United States Constitution, the right to travel from one state to another is considered to be "a virtually unconditional personal right, guaranteed by the Constitution." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (quoting *Shapiro v. Thompson*, 394 U.S. 618, 643 (1969) (Stewart, J., concurring)).   In *Saenz*, the U.S. Supreme Court summarized the three components of the "right to travel" as developed in Supreme Court jurisprudence: (1) "the right of a citizen of one State to enter and to leave another State;" (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State;" and (3) "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." 526 U.S. at 500.   Plaintiff does not assert that he is prevented from entering or leaving Colorado or that he wishes to relocate, and so only the second component of the right to travel is at issue here, *i.*e., the right to be treated as a "welcome visitor" when in the state.

---

[4]Plaintiff makes a separate argument that his rights under the Privileges and Immunities Clause are violated as well; however, as discussed below, the right to travel at issue here is derived from the Privileges and Immunities Clause and so only one analysis is required.

*Saenz* makes clear that this right is protected by the Privileges and Immunities Clause, Art. IV § 2, which provides that "The Citizens of Each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  526 U.S. at 501.  "Thus, by virtue of a person's state citizenship, a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits."  *Id.*  Although these protections are not absolute, the Clause generally bars discrimination against non-residents of the states "where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States."  *Id.* at 502 (quoting *Toomer v. Witsell*, 334 U.S. 385, 396 (1948)).

In order to prevail, Plaintiff must first establish that the "privilege" at issue falls within the scope of the Privileges and Immunities Clause.  In general, the Clause applies only to rights that "bear upon the vitality of the Nation as a single entity" and are "sufficiently basic to the livelihood of the Nation."  *Supreme Court v. Friedman*, 487 U.S. 59, 64 (1988).  If the right is protected, the regulation may nonetheless be constitutional if the state can show "substantial reason" for the discrimination against non-citizens, *i.e.*, "something to indicate that non-citizens constitute a peculiar source of evil at which the statute is aimed."  *Hicklin v. Orbeck*, 437 U.S. 518, 526 (1978) (quoting *Toomer*, 334 U.S. at 398).  Although the existence of a less restrictive means may be considered, *see Friedman*, 487 U.S. at 67, in general the evaluation must "be conducted with due regard for the principle that States should have considerable leeway in analyzing local evils and prescribing appropriate cures."  *Toomer*, 334 U.S. at 396.  The state must also demonstrate a reasonable "fit" between the regulation and the evil to be avoided, in other words, "the degree of

9

discrimination exacted must be substantially related to the threatened danger." *Bach v. Pataki*, 408 F.3d 75, 92 (2d Cir. 2005) (citation omitted), *cert. denied*, 546 U.S. 1174 (2006).

Plaintiff asserts that his right to carry a concealed weapon, or, when in Denver, to carry a handgun outside of a dwelling or automobile, is a fundamental right and therefore within the scope of the Privileges and Immunities Clause.  His legal authority on this issue, however, addresses only Second Amendment issues generally and does not demonstrate how concealed or open carry implicates "the vitality of the Nation as a single entity."  As discussed further below, while the Supreme Court has recently made clear that the Second Amendment strongly protects an individual's right to have a firearm in the home for the purpose of self-defense, the right may nonetheless be restricted to certain persons and is entitled to less protection outside the home.  *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008).  Nevertheless, I need not resolve this issue because I conclude that, even if the Privileges and Immunities Clause extends to the conduct that Plaintiff wishes to engage in, Colorado has demonstrated a substantial reason for restricting concealed handgun permits to state residents and a substantial relationship between the restriction and the interest it seeks to promote.

The Attorney General argues that the state has a public safety interest in regulating firearms and that it has a greater ability to monitor residents for compliance with the requirements of the concealed handgun licensing scheme than non-residents.  There are numerous factors that disqualify an applicant for a concealed weapons permit, or that would require revocation of a license previously issued, including criminal convictions, chronic use of alcohol or controlled substances, or being the subject of a protection order.  In addition,

10

a license may be denied if there is "a reasonable belief that documented previous behavior by the applicant makes it likely that the applicant will present a danger to self or others if the applicant receives a permit to carry a concealed handgun."  C.R.S. § 18-12-203(2). The Attorney General has presented competent and uncontradicted evidence in the form of affidavits showing the superior availability of information regarding these matters for residents as opposed to non-residents.  This evidence establishes that from the initial background check of an applicant through ongoing monitoring needed to determine whether revocation is appropriate, it is much more difficult and expensive to obtain information pertinent to an applicant's eligibility for a concealed handgun permit from out-of-state sources.  Information about a person's contacts with law enforcement, mental health status, alcohol and drug use, and domestic violence history is simply more likely to be found in the jurisdiction where that person resides.  Colorado has a substantial interest in restricting permits to those persons whose information is more readily available; moreover, the restriction is tailored to that need.

I note that other courts that have considered the issue have concluded that the state's interest in monitoring eligibility is a substantial reason for restricting weapon permits to residents.  *Bach*, 408 F.3d at 92-93 (noting that state has an interest in the entirety of a licensee's relevant behavior and the state can only monitor activities that take place in the state; other states cannot adequately play the part of monitor or provide the issuing state with the stream of behavioral information needed to ensure that eligibility criteria are met); *Peruta v. County of San Diego*, __ F. Supp. 2d __, 2010 WL 5137137 (S.D. Calif. 2010) (adopting analysis in *Bach* to hold that residency requirement for concealed weapon permit does not violate Privileges and Immunities Clause).

11

In response, Plaintiff argues that the restriction is less than perfect because the availability of information for a person who moves to Colorado and shortly thereafter applies for a concealed weapons permit is no greater than for an out-of-state resident. This argument is only relevant to the initial background check and not to the state's interest in ongoing monitoring of the permittee for continued eligibility. Again, that interest is a substantial one and is not implicated by Plaintiff's hypothetical situation. Moreover, in general, where the law requires a fit between the means chosen and ends to be achieved by a regulation, that fit only needs to be reasonable, not perfect. *See, e.g., Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989) (in First Amendment context, requirement of narrow tailoring means "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served."); *Peruta* at *8. Plaintiff also argues that the state's interest in monitoring is not genuine because it grants reciprocity to a number of other states, permitting concealed weapons license holders of those states to carry concealed in Colorado. However, this does not demonstrate that the regulation is not substantially related to the state interest to be promoted. Colorado may reasonably rely on other states to confirm and monitor the eligibility of their own concealed weapons permit holders, while still restricting issuance of its own permits to state residents.

I agree that Colorado's interest in obtaining information about licensees is a substantial reason for restricting the issuance of concealed handgun permits to residents of the state and that there is a reasonable relationship between the interest sought to be promoted and the regulations created. Therefore, the residency requirement does not violate Plaintiff's right to travel as guaranteed by the Privileges and Immunities Clause.

2.    Second Amendment

Plaintiff next argues that his inability to obtain a concealed weapon permit infringes on his Second Amendment[5] right to keep and bear arms.  He argues that the Supreme Court's recent decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), which held that the Second Amendment confers an individual right, establishes that he has a fundamental right to carry a concealed weapon and that, therefore, the law must be subjected to strict scrutiny.  Again, I disagree.

In *Heller*, the Supreme Court examined the history of the Second Amendment and contemporaneous jurisprudence to determine whether the Amendment was violated by several District of Columbia statutes which generally prohibited the possession of handguns and required any other lawful firearms in the home to be kept inoperable (unloaded and disassembled or bound by a trigger lock).  The Court concluded that the Second Amendment confers an individual right to "to possess and carry weapons in case of confrontation."  554 U.S. at 592.  It found that the District's prohibition on operable handguns in the home was unconstitutional because the inherent right to self-defense is central to the Second Amendment and the regulation extends to the home, "where the need for defense of self, family, and property is most acute."  *Id.* at 628.  However, the Court held that the right was not unlimited, noting that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were

---

[5]The Second Amendment provides that "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."  The Supreme Court recently held that the Second Amendment is fully applicable to the states by virtue of the Fourteenth Amendment. *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010).

lawful under the Second Amendment or state analogues." *Id.* at 626.  The Court goes on to state that its opinion should not cast doubt on "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places . . . or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27.  In general, the Court appears to suggest that the core purpose of the right conferred by the Second Amendment was to allow "law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635.

Because the *Heller* decision is fairly recent, few Circuit Courts of Appeals have had the opportunity to opine on how to implement its principles.  The Tenth Circuit is one of them, however, and it adopts an approach outlined by the Third Circuit in *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010).  *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010).  This is a two-pronged approach, whereby the reviewing court examines: (1) whether the law imposes a burden falling within the scope of the Second Amendment's guarantee; and (2) if it does, whether the law passes muster under "some form of means-end scrutiny." *Reese*, 627 F.3d at 800-1 (quoting *Marzzarella*, 614 F.3d at 89).  Although the *Heller* Court did not specify what level of scrutiny should be applied to a challenged law, other than indicating that rational basis would generally be inappropriate, several courts have applied intermediate scrutiny to federal firearm laws.  *See Reese*, 627 F.3d at 801-2 (discussing *Marzzarella* and *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (*en banc*)).

The *Mazzarella* court examined a Second Amendment challenge to a federal law prohibiting the possession of firearms with obliterated serial numbers.  Analogizing to the First Amendment, the Third Circuit in *Marzzarella* concluded that the Second Amendment

14

can trigger more than one type of scrutiny, depending on the type of restriction. 614 F.3d at 96-97. The court decided intermediate scrutiny was appropriate because the law did not "severely limit the possession of firearms." *Id.* at 97. The Seventh Circuit in *Skoien* similarly applied intermediate scrutiny to a federal statute prohibiting the possession of firearms by any person convicted of a misdemeanor crime of domestic violence. 614 F.3d at 641. The intermediate scrutiny test applied by both courts generally requires an analysis of whether the challenged law serves a substantial state interest and whether there is a reasonable fit between the objective and the law. *Marzzarella*, 614 F.3d at 98.

The Tenth Circuit in *Reese* used a similar approach in examining a federal law which prohibits possession of a firearm by a person subject to a domestic protection order. 627 F.3d at 802. Although the regulation addresses a right protected by the Second Amendment, in that it creates a complete prohibition on possession of a firearm, the Tenth Circuit concluded that the statute applies to a narrow class of persons "who, based on their past behavior, are more likely to engage in domestic violence" and was therefore subject to intermediate scrutiny. *Id.* Applying this standard, the court found that the government had a substantial interest in keeping firearms out of the hands of people who have been found to pose a credible threat to the physical safety of a family member and that there was a reasonable relationship to that objective in the defendant's case. *Id.* at 803-4.

I will assume without deciding that the statute at issue falls within the scope of the Second Amendment in that it places restrictions on Plaintiff's right to carry a weapon for the purpose of self-defense. However, I disagree that the statute should be reviewed under strict scrutiny and conclude, like the cases discussed above, that intermediate scrutiny is appropriate. I agree with the Attorney General and the authorities discussed above that

15

*Heller* indicates that the Second Amendment extends the strongest protection to the right of self-defense in the home.  The statute at issue does not infringe on that right, even for Plaintiff, as he is permitted to have a firearm in any dwelling area under his control while in the state.  C.R.S. § 18-12-105(2)(a).  Moreover, the statute burdens only a narrow class of persons, *i.e.*, otherwise qualified out-of-state residents who wish to obtain a license to carry a concealed weapon in Colorado.  Moreover, as noted above, the statute is even less restrictive that the federal statutes discussed in *Reese* and *Skoien*, as it does not completely prevent this class of persons from possessing firearms while in the state. Rather, non-residents may carry openly outside of Denver and in Denver may have firearms in their private vehicles while traveling and in private dwelling areas.  Therefore, it does not severely limit the possession of firearms but rather regulates "the manner in which persons may lawfully exercise their Second Amendment rights."  *Marzzarella*, 614 F.3d at 97; *see also Peruta*, 2010 WL 5137137 at *8 (applying intermediate scrutiny to concealed weapons permit regulation, and holding that licensing requirements did not violate Second Amendment because of state's substantial interest in public safety and reducing the rate of gun use in crime).

The intermediate scrutiny test articulated by the Tenth Circuit and other courts is nearly identical to that employed in examining discrimination against non-residents under the Privileges and Immunities Clause, *i.e.*, there must be a substantial interest at stake and a good fit between the regulation and the asserted objective.  Therefore, for the reasons discussed above, I conclude that the state's interest in monitoring a potential licensee's eligibility for a concealed handgun permit, and the increased difficulty of doing so for out-of-state residents, also overcomes Plaintiff's Second Amendment challenge.

16

3.    Equal Protection

The Attorney General moves for summary judgment on Plaintiff's Equal Protection

challenge to the statute on the grounds that a non-resident is not similarly situated to a

resident of the state.  Moreover, the Attorney General argues, even if Plaintiff could show

that he was similarly situated, the statute nonetheless survives because there is a rational

basis for the different treatment of out-of-state residents.  I agree.

The Equal Protection Clause provides that "[n]o State shall ... deny to any person

within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The

Clause "does not forbid classifications.  It simply keeps governmental decisionmakers from

treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505

U.S. 1, 10 (1992).

As discussed above, I conclude that residents and non-residents are not similarly

situated in terms of the state's ability to obtain information about and monitor the potential

licensee's eligibility for a concealed weapons permit.  Because states "must treat like cases

alike but may treat unlike cases accordingly," *Vacco v. Quill*, 521 U.S. 793, 799 (1997),

and this involves unlike cases, Colorado's different treatment of non-residents does not

violate the Equal Protection Clause.  *See Peruta,* 2010 WL 5137137 at *10 (finding

residents and non-residents to be situated differently for the purposes of concealed

weapons permit in light of state's substantial interest in monitoring gun licensees).

This disposes of all of Plaintiff's constitutional challenges to Colorado's requirement

that only residents of the state are eligible to apply for concealed handgun permits.

Accordingly, it is ordered:

1.    Plaintiff's Motion for Summary Judgment against Defendant LaCabe (ECF

No. 17) is denied.

2.      Intervenor Attorney General's Cross-Motion for Summary Judgment (ECF No. 34) is granted.   The claims against all parties are dismissed with prejudice.  Judgment shall be entered in favor of Defendants and Intervenor and against Plaintiff on all of his claims.

3.      Defendants LaCabe and Intervenor Attorney General may have their costs.

DATED at Denver, Colorado, on March 8, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge