IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 10-cv-00059-WDM-MEH

GRAY PETERSON,

      Plaintiff,

v.

ALVIN LACABE, in his official capacity as Manager of Safety for the City and County of
Denver, and
PETER WEIR, in his official capacity as Executive Director of the Colorado Department
of Public Safety,

      Defendants.

---

## ORDER ON MOTION TO DISMISS AND
## CROSS MOTIONS FOR SUMMARY JUDGMENT

---

Miller, J.

      This case is before me on the Motion to Dismiss Executive Director Peter Weir and

Colorado Attorney General's Request to Be Heard (ECF No. 6), filed by Defendant Peter

Weir and Colorado Attorney General John W. Suthers, as well as Plaintiff's Motion for

Summary Judgment against Defendant LaCabe (ECF No. 17) and Defendant LaCabe's

Cross Motion for Summary Judgment Against Plaintiff (ECF No. 19).  I have reviewed the

pertinent portions of the record and the legal authorities and arguments contained in the

parties' briefs.  For the reasons that follow, Defendant Weir's Motion to Dismiss will be

granted and Defendant LaCabe's Cross Motion for Summary Judgment will be denied.  I

will reserve ruling on Plaintiff's Motion for Summary Judgment against Defendant LaCabe.

Background

Plaintiff alleges that Colorado's state statutes regarding permits to carry concealed handguns, C.R.S. § 18-12-201 *et seq.*, are unconstitutional as applied to him.  Specifically, Plaintiff alleges that the statute requiring an applicant for a permit to carry a concealed handgun be a resident of the state violates the Privileges and Immunities Clause of the United States Constitution, the Second Amendment of the United States Constitution, and the Fourteenth Amendment of the United States Constitution.

Authority to issue concealed handgun permits is granted to the county sheriffs. C.R.S. § 18-12-203.  The statute provides that "except as otherwise provided in this section, a sheriff shall issue a permit to carry a concealed handgun to an applicant who . . . (a) Is a legal resident of the state of Colorado."  C.R.S. § 18-12-203 (1).  Other application criteria include age; ineligibility factors such as criminal convictions, chronic use of alcohol or controlled substances, or being the subject of a protection order; and evidence of competence with a handgun.  *Id.*  The statute further provides that the sheriff shall "deny, revoke, or refuse to renew a permit if an applicant or a permittee fails to meet one of the criteria listed . . . ." C.R.S. § 18-12-203 (3).

Pursuant to reciprocity principles, Colorado will recognize certain concealed handgun permits issued by other states.  C.R.S. § 18-12-213.  Plaintiff is a resident of Washington and has a permit issued by the State of Washington but Washington is not among the states with which Colorado grants reciprocity.  Plaintiff also has a permit issued by Florida; however, under the statute, Colorado does not recognize permits issued by a state to a non-resident of that state.  C.R.S. § 18-12-213(1)(b)(I).

On or about June 2, 2009, Plaintiff filled out an application in Denver County for a

2

Colorado concealed handgun permit.[1]  Defendant LaCabe is the Manager of Safety for the City and County of Denver and acts as the sheriff of Denver County.  On or about July 2, 2009, Defendant LaCabe sent Plaintiff a letter notifying Plaintiff that Plaintiff's application was denied because Plaintiff was not a Colorado resident.  Defendant Weir, the Executive Director for the Department of Public Safety of the State of Colorado, apparently had no role in the denial of Plaintiff's application.

Plaintiff's lawsuit, filed pursuant to 42 U.S.C. § 1983, asserts several claims for relief.  Plaintiff seeks, *inter alia*, an injunction "prohibiting Defendants from denying nonresidents of Colorado the right to apply for an obtain a [concealed handgun permit], solely on account of their non-resident status."  Amended Complaint (ECF No. 4) at ¶ 62.  He also seeks an injunction "requiring Defendants to give reciprocity and recognition to [concealed handgun permits] issued by other states to nonresidents of such states . . . ."  *Id.* at ¶ 64.  Defendant Weir seeks dismissal of the claims against him on Eleventh Amendment immunity grounds and because he has no enforcement power to issue or deny a permit to carry a concealed handgun in the State of Colorado.  Accordingly, he argues that he does not have authority to implement the actions sought by Plaintiff through this lawsuit.  Defendant LaCabe seeks summary judgment on the grounds that he has no discretion in the granting or denial of a concealed handgun permit and that he is not a proper defendant to defend the statute on behalf of the state.

Attorney General John W. Suthers also seeks the opportunity to be heard regarding the constitutionality of the state statutes pursuant to statute and rule.

---

[1]The parties have stipulated to the facts concerning Plaintiff's application for a permit and the denial of that application.

<u>Discussion</u>

1.    <u>Immunity of Defendant Weir</u>

In general, the Eleventh Amendment immunity is available to agencies deemed to

be arms of the state.    *Griess v. State of Colo.,* 841 F.2d 1042, 1044 (10th Cir. 1988)

(concluding that Eleventh Amendment immunity was not waived for State of Colorado or

CDOC).   However, immunity does not apply to the extent that a plaintiff seeks prospective

declaratory or injunctive relief pursuant to *Ex Parte Young,* 209 U.S. 123 (1908).   *See Hill*

*v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007) (under *Ex Parte Young*, "the Eleventh

Amendment generally will not operate to bar suits so long as they (i) seek only declaratory

and injunctive relief rather than monetary damages for alleged violations of federal law, and

(ii) are aimed against state officers acting in their official capacities, rather than against the

State itself."); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1233 (10th Cir. 2001).   Nonetheless,

there must be some connection between the defendant's enforcement power and the law

at issue.   *Ex parte Young*, 209 U.S. at 157; *Weston v. Cassata*, 37 P.3d 469, 474 (Colo.

App. 2001) ("[I]n actions for declaratory or injunctive relief . . . [state] government entities

and their officers are properly considered 'persons' under § 1983 so long as they are

responsible for the implementation and enforcement of a state statute.").

Although Plaintiff has alleged that Weir is "primarily responsible for administering the

recognition and reciprocity of [concealed handgun licenses] issued by other states"

(Amended Complaint ¶ 54), I need not accept this allegation as true if it is contradicted by

state statute setting forth the scope of an official's authority, of which I may take judicial

notice.   *See United States v. Coffman,* 638 F.2d 192, 194 (10th Cir.1980) (court may take

judicial notice of state statutes).   The enabling legislation makes clear that the General

4

Assembly placed the authority for implementing and administering the state's concealed handgun law solely with local sheriffs, not with Defendant Weir.  C.R.S. § 18-12-201(3) ("the general assembly hereby instructs each sheriff to implement and administer" the statutory provisions concerning concealed handgun permits).  Plaintiff cites no provision of law showing that Weir has any authority or ability to provide the relief sought by Plaintiff and I find none.  Accordingly, Defendant Weir's motion should be granted.

Dismissal of Defendant Weir is without prejudice to substituting or naming an alternative defendant to represent the State of Colorado, if appropriate.

2.    Opportunity for Attorney General to be Heard

The Attorney General of the State of Colorado seeks an opportunity to be heard on the constitutionality of the statute.  I interpret this as a request to intervene to present evidence and argument on the question of the constitutionality of the Colorado statute pursuant to 28 U.S.C. § 2403(b) and Fed. R. Civ. P. 5.1(c).  The statute permits the state to intervene while the rule permits the attorney general in his or her own name to intervene on behalf of the state.  Given that authority, the Colorado Attorney General has the unconditional right to intervene pursuant to Rule 24(a)(1).  Accordingly, the Attorney General shall be permitted to intervene on behalf of the State of Colorado in his own name and to respond to Plaintiff's motion for summary judgment.

3.    Plaintiff's Motion for Summary Judgment

I will reserve ruling on this motion until briefing is complete.  Within 30 days of the date of this order, the Attorney General shall file a response to Plaintiff's Motion for Summary Judgment; Plaintiff may thereafter file a reply brief in accordance with the local rules of this court.

4.   Defendant LaCabe

In Plaintiff's Motion for Summary Judgment, he asserts that Defendant LaCabe's

denial of the permit violated Plaintiff's constitutional right to travel, violated Plaintiff's rights

under the Privileges and Immunities clause of the United States Constitution, and violated

Plaintiff's rights under the Second Amendment.  Plaintiff presents various legal arguments

regarding the residency requirement and his constitutional challenges to it.  As relief, he

requests that Defendant LaCabe "should be ordered to disregard Plaintiff's residency status

and process Plaintiff's [concealed handgun permit] accordingly."  Pl.'s Mot. for Summ. J.,

ECF No. 17, at 14.

In response, Defendant LaCabe does not address Plaintiff's constitutional arguments

on the merits but rather asserts that LaCabe is not a proper defendant and/or was acting

only in a ministerial capacity without the ability to exercise discretion in denying the

application.  He argues that Plaintiff's constitutional arguments are directed at the state, but

that LaCabe is not a representative of the state.   LaCabe contends that Plaintiff's

arguments amount to a facial challenge to the statute, not an as-applied challenge, and that

Plaintiff must seek a declaration that the statute is unconstitutional.   Therefore, LaCabe

notes that Plaintiff cannot receive the relief requested, *i.e.*, a mandatory injunction ordering

LaCabe to process Plaintiff's handgun permit application, absent such a declaration.

I am not entirely persuaded by LaCabe's contention that he is not a proper

defendant in this action.  I note that a basic element of standing for Article III purposes is

an injury "fairly traceable to the challenged action of the defendant" and a likelihood that

the injury will be redressed by a favorable decision.  *Bronson v. Swensen*, 500 F.3d 1099,

1106 (10th Cir. 2007).  Here, it is undisputed that LaCabe is the responsible official in

6

enforcing the statutory scheme in Denver.  Moreover, LaCabe's action in denying Plaintiff's application is the cause of Plaintiff's alleged injury (inability to obtain a concealed handgun permit) and a favorable decision will redress the injury.  Therefore, for the purposes of Article III standing, it appears that LaCabe is an appropriate defendant.

Moreover, that LaCabe could not exercise discretion does not necessarily bar an action against him.  *See, e.g., Finberg v. Sullivan,* 634 F.2d 50, 54 (3d Cir. 1980) (examining whether, under *Ex Parte Young*, local officials enforcing statutory scheme were proper defendants and concluding that the fact that their duties were entirely ministerial was not a defense to liability; "Under *Ex Parte Young* the inquiry is not the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights"). The court in *Finberg* similarly rejected any notion that the defendants did not have a sufficient interest in the constitutionality of the rules to be adverse to the plaintiff, similar to what LaCabe argues here.  *Id.* ("Once the [local officials] have relied on the authority conferred by the [state] procedures to work an injury to the plaintiff, they may not disclaim interest in the constitutionality of these procedures.").  Accordingly, I disagree that the motion for summary judgment should be denied on this basis.

LaCabe has provided no legal authority to show why he cannot address the constitutional arguments presented by Plaintiff regarding the statute.  Nonetheless, given that the Attorney General is now a party and will presumably respond to these issues, I will also reserve ruling on Defendant LaCabe's liability.

Defendant LaCabe's Cross Motion for Summary Judgment is based on the same

arguments as his response brief and, for the reasons set forth above, will be denied.

Accordingly, it is ordered:

1.      The Motion to Dismiss Executive Director Peter Weir and Colorado Attorney General's Request to Be Heard (ECF No. 6) is granted .

2.      All claims against Defendant Peter Weir shall be dismissed.

3.      John W. Suthers, Attorney General for the State of Colorado, is a party to this action as an intervenor.

4.      The Attorney General may file a response to Plaintiff's Motion for Summary Judgment against Defendant LaCabe (ECF No. 17) within 30 days of the date of this order and Plaintiff may file a reply brief in accordance with D.C.COLO.LCivR 56.1.A..

5.      Defendant LaCabe's Cross Motion for Summary Judgment Against Plaintiff (ECF No. 19) is denied.

DATED at Denver, Colorado, on October 20, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller


Civil Action No. 10-cv-00059-WDM-MEH

GRAY PETERSON,

      Plaintiff,

v.

ALVIN LACABE, in his official capacity as Manager of Safety for the City and County of
Denver,

      Defendant,

JOHN W. SUTHERS, Attorney General for the State of Colorado,

      Intervenor.

---

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

---

Miller, J.

     This case is before me on Plaintiff's Motion for Summary Judgment against

Defendant LaCabe (ECF No. 17) and Intervenor Attorney General's Cross-Motion for

Summary Judgment (ECF No. 34).[1]  I have reviewed the pertinent portions of the record

and the legal authorities and arguments contained in the parties' briefs.  For the reasons

that follow, Plaintiff's Motion for Summary Judgment will be denied and the Attorney

---

     [1]The briefing in this case is in a somewhat unusual posture.  Plaintiff's motion
was filed before the Attorney General intervened as a party.  I resolved the motion in
part by denying LaCabe's procedural defenses, see October 20, 2010 Order (ECF No.
26), and in the same order permitted the Attorney General to intervene.  Because
Defendant LaCabe did not respond to the merits of Plaintiff's motion for summary
judgment, I reserved ruling on the substantive issues presented.  The Attorney General
thereafter assumed the defense of Defendant LaCabe by addressing Plaintiff's
challenges on the merits in a response brief.  The Attorney General also filed his own
motion for summary judgment.

General's Cross-Motion for Summary Judgment will be granted.  I conclude that the statute

at issue does not violate Plaintiff's constitutional rights.

<u>Background</u>

Plaintiff alleges that Colorado's state statutes regarding permits to carry concealed

handguns, C.R.S. § 18-12-201 *et seq.*, are unconstitutional as applied to him.  Specifically,

Plaintiff alleges that the statute requiring an applicant for a permit to carry a concealed

handgun be a resident of the state violates the Privileges and Immunities Clause of the

United States Constitution, the Second Amendment of the United States Constitution, and

the Fourteenth Amendment of the United States Constitution.

In general, it is unlawful to carry a concealed firearm in the State of Colorado without

a license.  C.R.S. § 18-12-105.  The law contains several exceptions, most relevant here

are for "[a] person in his or her own dwelling or place of business or on property owned or

under his or her control at the time of the act of carrying" and for "[a] person in a private

automobile or other private means of conveyance who carries a weapon for lawful

protection of such person's or another's person or property while traveling."  C.R.S. § 18-

12-105(2)(a) & (b).

Authority to issue concealed handgun permits is granted to the county sheriffs.

C.R.S. § 18-12-203.  The statute provides that "except as otherwise provided in this

section, a sheriff shall issue a permit to carry a concealed handgun to an applicant who .

. . (a) Is a legal resident of the state of Colorado."  C.R.S. § 18-12-203 (1).  Other

application criteria include age and evidence of competence with a handgun; in addition,

the applicant must not be disqualified by any ineligibility factors such as criminal

convictions, chronic use of alcohol or controlled substances, or being the subject of a

2

protection order.  *Id*.  The statute further provides that the sheriff <u>shall</u> "deny, revoke, or refuse to renew a permit if an applicant or a permittee fails to meet one of the criteria listed . . . ."  C.R.S. § 18-12-203 (3).

The Attorney General presents evidence concerning the methods used to verify an applicant's eligibility for a permit.  Michael Ostrander, a detective from the Sheriff's Office of Denver County, Colorado, works as a concealed handgun permit background investigator and provides an affidavit regarding his background checks.   Exh. A to Intervenor's Resp., ECF No. 33-1.  He states that applicants must submit to a face-to-face interview, present a Colorado driver's license or identification card, evidence of citizenship, proof of training, and, if the applicant has served in the military, copy of the relevant DD214 form.  *Id*. ¶ 4.  Fingerprints are collected, which are forwarded to the Colorado Bureau of Investigation ("CBI").  *Id*. at ¶ 5.  The CBI processes the fingerprints and runs the identity of the applicant through national and other databases.  *Id*.  Detective Ostrander states, however, that nationwide databases are often incomplete and inaccurate and so he supplements the CBI background check by requesting information from law enforcement agencies in jurisdictions where an applicant reports previous residence.  *Id*. at ¶¶ 6-7.  He emphasizes that much of the pertinent information from the local sources, including misdemeanor crimes or official contacts resulting from drug and alcohol abuse, is not available in national databases.  *Id*. at ¶ 8.  Local databases also contain information about mental health contacts, aggressive driving tendencies, 911 calls indicative of domestic violence or other violent contacts not resulting in arrest, juvenile arrest records, and plea agreements, any of which could disqualify an applicant for a permit.  *Id*. at ¶ 9.  He asserts that he does not have access to these local databases in jurisdictions outside of the state

and local agencies are not always cooperative in providing assistance. *Id.* at ¶ 11. He provides specific examples of difficulties he has had obtaining information regarding residents who previously lived in other states from those local authorities. *Id.* Detective Ostrander also explains that out-of-state jurisdictions sometimes charge for providing background information, but funds available for processing applications are limited, only $100 per application. *Id.* at ¶ 12. He also explains that the statute requires a background check to be completed within 90 days but out-of-state jurisdictions are slow in responding to information requests. *Id.* at ¶ 14.

The Attorney General also provides an affidavit from James Spoden, who is an InstaCheck Data Supervisor at the CBI. Exh. B to Intervenor's Resp., ECF No. 33-2. Mr. Spoden explains that the CBI's background check involves access to five state and national databases, including the FBI's National Instant Criminal Background Check System ("NICS"), the Integrated Colorado Online Network ("ICON"), National Crime Information Center ("NCIC"), the Colorado Crime Information Center ("CCIC"), and the Interstate Identification Index ("III"). *Id.* at ¶ 8. He asserts that many important records relevant to the background check are maintained only at the state level and are available only to state and local authorities. *Id.* at ¶ 9. While he has access to the databases for Colorado, he does not have the ability or authorization to access the criminal justice or judicial databases of other states. *Id.* at ¶ 10. Therefore, he would not be able to obtain certain information about a non-resident whose history might disqualify him or her from obtaining a handgun permit. *Id.* at ¶ 11. He notes also that in Colorado, fingerprints of concealed permit holders are flagged in the CCIC, which permits the issuing agency to be immediately notified of an arrest of a permittee. *Id.* at ¶ 12. This assists in ensuring the ongoing eligibility of permit

holders; however, the state would not have that same ability to monitor non-state residents for law enforcement contacts outside of Colorado, where they would be more likely to occur. *Id.* at ¶ 12.

Pursuant to reciprocity principles, Colorado will recognize certain concealed handgun permits issued by other states. C.R.S. § 18-12-213. Plaintiff is a resident of Washington and has a permit issued by the State of Washington but Washington is not among the states with which Colorado grants reciprocity. Plaintiff also has a permit issued by Florida; however, under the statute, Colorado does not recognize permits issued by a state to a non-resident of that state. C.R.S. § 18-12-213(1)(b)(I).

In addition, the City and County of Denver has a municipal ordinance that generally prohibits open carry of a firearm or other weapon. Denver Code § 38-117(b). Denver requires a permit for carrying a concealed weapon, consistent with the state statute. Denver Code § 38-117(a) and (f). The prohibition on concealed or open carry, however, does not apply if the person "is carrying the weapon concealed within a private automobile or other private means of conveyance, for hunting or for lawful protection of such person's or another person's person or property, while travelling [sic]." Denver Code § 38-117(f)(2). It is also an affirmative defense if the weapon is carried by a person "in his or her own dwelling, or place of business, or on property owned or under such person's control at the time of carrying such weapon." Denver Code § 38-118(a). Plaintiff does not challenge the municipal regulations but argues that the combined effect of the state and city laws means that he is unable to carry any handgun anywhere within the city limits of Denver, whether open or concealed, because he has no private vehicle or dwelling.

On or about June 2, 2009, Plaintiff filled out an application in Denver County for a

Colorado concealed handgun permit.[2]  Defendant LaCabe is the Manager of Safety for the City and County of Denver and acts as the sheriff of Denver County.  On or about July 2, 2009, Defendant LaCabe sent Plaintiff a letter notifying Plaintiff that Plaintiff's application was denied because Plaintiff was not a Colorado resident.

Plaintiff's lawsuit, filed pursuant to 42 U.S.C. § 1983, asserts several claims for relief. Plaintiff seeks, *inter alia*, an injunction "prohibiting Defendants from denying nonresidents of Colorado the right to apply for an obtain a [concealed handgun permit], solely on account of their non-resident status."  Amended Complaint (ECF No. 4) at ¶ 62.  He also seeks an injunction "requiring Defendants to give reciprocity and recognition to [concealed handgun permits] issued by other states to nonresidents of such states . . . ."  *Id.* at ¶ 64.  However, there is no proper defendant[3] with authority to modify the state's rules regarding reciprocity and Plaintiff does not address any arguments to this aspect of the regulations.  Therefore, I conclude that Plaintiff has abandoned his challenge to Colorado's permit regime to the extent it concerns reciprocity issues.

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict

---

[2]The parties have stipulated to the facts concerning Plaintiff's application for a permit and the denial of that application.

[3]The only state defendant named in Plaintiff's pleadings was Peter Weir, who was dismissed on Eleventh Amendment immunity grounds and because he had no authority to implement or modify the state's reciprocity regime.  See October 20, 2010 Order, ECF No. 26.  Plaintiff has not sought to name an alternative defendant.

for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

Plaintiff's arguments indicate that he is challenging the concealed handgun licensing regulations as applied to him. In particular, he challenges the law as it applies to him when he is visiting Denver, because of the municipality's prohibition on open carry. Nonetheless, because of the broad relief he seeks, at least part of his arguments appear to be premised on the principle that the statute is unconstitutional on its face in all applications. "Facial challenges are disfavored[,]" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, (2008), and generally fail if any "set of circumstances exists under which the [law] would be valid," *id.* at 449. In other words, to succeed on a facial challenge, Plaintiff must show that the law is unconstitutional in all of its applications. *United States v. Salerno,* 481 U.S. 739, 745 (1987).

### Discussion

Plaintiff broadly challenges the residency requirement for a concealed handgun license on three constitutional grounds: (1) the Privileges and Immunities Clause; (2) the Second Amendment; and (3) the Equal Protection Clause. I will address the arguments and applicable law for each in turn.

7

1.   Privileges and Immunities/Right to Travel

Defendant argues that the ban on issuing concealed weapons licenses to non-residents means that he "is prohibited from engaging in an activity that residents of Colorado (and many other states) are permitted to do."  Pl.'s Mot. for Summ. J., ECF No. 17, at 5.  He argues that he is therefore "penalized when he travels to Denver (and all of Colorado)," which violates his constitutional right to travel.  *Id.* at 6.[4]  Plaintiff further contends that a fundamental right is abridged by this regulation and so it must be examined under a strict scrutiny standard of review.  I disagree.

Although not expressly provided for in the United States Constitution, the right to travel from one state to another is considered to be "a virtually unconditional personal right, guaranteed by the Constitution."  *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (quoting *Shapiro v. Thompson*, 394 U.S. 618, 643 (1969) (Stewart, J., concurring)).  In *Saenz*, the U.S. Supreme Court summarized the three components of the "right to travel" as developed in Supreme Court jurisprudence: (1) "the right of a citizen of one State to enter and to leave another State;" (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State;" and (3) "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." 526 U.S. at 500.  Plaintiff does not assert that he is prevented from entering or leaving Colorado or that he wishes to relocate, and so only the second component of the right to travel is at issue here, *i.*e., the right to be treated as a "welcome visitor" when in the state.

---

[4]Plaintiff makes a separate argument that his rights under the Privileges and Immunities Clause are violated as well; however, as discussed below, the right to travel at issue here is derived from the Privileges and Immunities Clause and so only one analysis is required.

*Saenz* makes clear that this right is protected by the Privileges and Immunities Clause, Art. IV § 2, which provides that "The Citizens of Each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  526 U.S. at 501.  "Thus, by virtue of a person's state citizenship, a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits."  *Id.*  Although these protections are not absolute, the Clause generally bars discrimination against non-residents of the states "where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States."  *Id.* at 502 (quoting *Toomer v. Witsell*, 334 U.S. 385, 396 (1948)).

In order to prevail, Plaintiff must first establish that the "privilege" at issue falls within the scope of the Privileges and Immunities Clause.  In general, the Clause applies only to rights that "bear upon the vitality of the Nation as a single entity" and are "sufficiently basic to the livelihood of the Nation."  *Supreme Court v. Friedman*, 487 U.S. 59, 64 (1988).  If the right is protected, the regulation may nonetheless be constitutional if the state can show "substantial reason" for the discrimination against non-citizens, *i.e.*, "something to indicate that non-citizens constitute a peculiar source of evil at which the statute is aimed."  *Hicklin v. Orbeck*, 437 U.S. 518, 526 (1978) (quoting *Toomer*, 334 U.S. at 398).  Although the existence of a less restrictive means may be considered, *see Friedman*, 487 U.S. at 67, in general the evaluation must "be conducted with due regard for the principle that States should have considerable leeway in analyzing local evils and prescribing appropriate cures."  *Toomer*, 334 U.S. at 396.  The state must also demonstrate a reasonable "fit" between the regulation and the evil to be avoided, in other words, "the degree of

9

discrimination exacted must be substantially related to the threatened danger." *Bach v. Pataki*, 408 F.3d 75, 92 (2d Cir. 2005) (citation omitted), *cert. denied*, 546 U.S. 1174 (2006).

Plaintiff asserts that his right to carry a concealed weapon, or, when in Denver, to carry a handgun outside of a dwelling or automobile, is a fundamental right and therefore within the scope of the Privileges and Immunities Clause. His legal authority on this issue, however, addresses only Second Amendment issues generally and does not demonstrate how concealed or open carry implicates "the vitality of the Nation as a single entity." As discussed further below, while the Supreme Court has recently made clear that the Second Amendment strongly protects an individual's right to have a firearm in the home for the purpose of self-defense, the right may nonetheless be restricted to certain persons and is entitled to less protection outside the home. *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008). Nevertheless, I need not resolve this issue because I conclude that, even if the Privileges and Immunities Clause extends to the conduct that Plaintiff wishes to engage in, Colorado has demonstrated a substantial reason for restricting concealed handgun permits to state residents and a substantial relationship between the restriction and the interest it seeks to promote.

The Attorney General argues that the state has a public safety interest in regulating firearms and that it has a greater ability to monitor residents for compliance with the requirements of the concealed handgun licensing scheme than non-residents. There are numerous factors that disqualify an applicant for a concealed weapons permit, or that would require revocation of a license previously issued, including criminal convictions, chronic use of alcohol or controlled substances, or being the subject of a protection order. In addition,

a license may be denied if there is "a reasonable belief that documented previous behavior by the applicant makes it likely that the applicant will present a danger to self or others if the applicant receives a permit to carry a concealed handgun."  C.R.S. § 18-12-203(2). The Attorney General has presented competent and uncontradicted evidence in the form of affidavits showing the superior availability of information regarding these matters for residents as opposed to non-residents.  This evidence establishes that from the initial background check of an applicant through ongoing monitoring needed to determine whether revocation is appropriate, it is much more difficult and expensive to obtain information pertinent to an applicant's eligibility for a concealed handgun permit from out-of-state sources.  Information about a person's contacts with law enforcement, mental health status, alcohol and drug use, and domestic violence history is simply more likely to be found in the jurisdiction where that person resides.  Colorado has a substantial interest in restricting permits to those persons whose information is more readily available; moreover, the restriction is tailored to that need.

I note that other courts that have considered the issue have concluded that the state's interest in monitoring eligibility is a substantial reason for restricting weapon permits to residents.  *Bach*, 408 F.3d at 92-93 (noting that state has an interest in the entirety of a licensee's relevant behavior and the state can only monitor activities that take place in the state; other states cannot adequately play the part of monitor or provide the issuing state with the stream of behavioral information needed to ensure that eligibility criteria are met); *Peruta v. County of San Diego*, __ F. Supp. 2d __, 2010 WL 5137137 (S.D. Calif. 2010) (adopting analysis in *Bach* to hold that residency requirement for concealed weapon permit does not violate Privileges and Immunities Clause).

11

In response, Plaintiff argues that the restriction is less than perfect because the availability of information for a person who moves to Colorado and shortly thereafter applies for a concealed weapons permit is no greater than for an out-of-state resident. This argument is only relevant to the initial background check and not to the state's interest in ongoing monitoring of the permittee for continued eligibility. Again, that interest is a substantial one and is not implicated by Plaintiff's hypothetical situation. Moreover, in general, where the law requires a fit between the means chosen and ends to be achieved by a regulation, that fit only needs to be reasonable, not perfect. *See, e.g., Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989) (in First Amendment context, requirement of narrow tailoring means "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served."); *Peruta* at *8. Plaintiff also argues that the state's interest in monitoring is not genuine because it grants reciprocity to a number of other states, permitting concealed weapons license holders of those states to carry concealed in Colorado. However, this does not demonstrate that the regulation is not substantially related to the state interest to be promoted. Colorado may reasonably rely on other states to confirm and monitor the eligibility of their own concealed weapons permit holders, while still restricting issuance of its own permits to state residents.

I agree that Colorado's interest in obtaining information about licensees is a substantial reason for restricting the issuance of concealed handgun permits to residents of the state and that there is a reasonable relationship between the interest sought to be promoted and the regulations created. Therefore, the residency requirement does not violate Plaintiff's right to travel as guaranteed by the Privileges and Immunities Clause.

12

2.    Second Amendment

Plaintiff next argues that his inability to obtain a concealed weapon permit infringes

on his Second Amendment[5] right to keep and bear arms.  He argues that the Supreme

Court's recent decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), which held

that the Second Amendment confers an individual right, establishes that he has a

fundamental right to carry a concealed weapon and that, therefore, the law must be

subjected to strict scrutiny.  Again, I disagree.

In *Heller*, the Supreme Court examined the history of the Second Amendment and

contemporaneous jurisprudence to determine whether the Amendment was violated by

several District of Columbia statutes which generally prohibited the possession of handguns

and required any other lawful firearms in the home to be kept inoperable (unloaded and

disassembled or bound by a trigger lock).   The Court concluded that the Second

Amendment confers an individual right to "to possess and carry weapons in case of

confrontation."   554 U.S. at 592.   It found that the District's prohibition on operable

handguns in the home was unconstitutional because the inherent right to self-defense is

central to the Second Amendment and the regulation extends to the home, "where the

need for defense of self, family, and property is most acute."   *Id.* at 628.   However, the

Court held that the right was not unlimited, noting that "the majority of the 19th-century

courts to consider the question held that prohibitions on carrying concealed weapons were

_____

[5]The Second Amendment provides that "A well regulated Militia being necessary
to the security of a free State, the right of the people to keep and bear Arms shall not be
infringed."  The Supreme Court recently held that the Second Amendment is fully
applicable to the states by virtue of the Fourteenth Amendment. *McDonald v. City of
Chicago*, 130 S. Ct. 3020 (2010).

lawful under the Second Amendment or state analogues." *Id.* at 626.  The Court goes on

to state that its opinion should not cast doubt on "longstanding prohibitions on the

possession of firearms by felons and the mentally ill, or laws forbidding the carrying of

firearms in sensitive places . . . or laws imposing conditions and qualifications on the

commercial sale of arms." *Id.* at 626-27.  In general, the Court appears to suggest that the

core purpose of the right conferred by the Second Amendment was to allow "law-abiding,

responsible citizens to use arms in defense of hearth and home." *Id.* at 635.

Because the *Heller* decision is fairly recent, few Circuit Courts of Appeals have had

the opportunity to opine on how to implement its principles.  The Tenth Circuit is one of

them, however, and it adopts an approach outlined by the Third Circuit in *United States v.*

*Marzzarella*, 614 F.3d 85 (3d Cir. 2010).  *United States v. Reese*, 627 F.3d 792, 800 (10th

Cir. 2010).  This is a two-pronged approach, whereby the reviewing court examines: (1)

whether the law imposes a burden falling within the scope of the Second Amendment's

guarantee; and (2) if it does, whether the law passes muster under "some form of means-

end scrutiny." *Reese*, 627 F.3d at 800-1 (quoting *Marzzarella*, 614 F.3d at 89).  Although

the *Heller* Court did not specify what level of scrutiny should be applied to a challenged law,

other than indicating that rational basis would generally be inappropriate, several courts

have applied intermediate scrutiny to federal firearm laws.  *See Reese*, 627 F.3d at 801-2

(discussing *Marzzarella* and *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (*en*

*banc*)).

The *Mazzarella* court examined a Second Amendment challenge to a federal law

prohibiting the possession of firearms with obliterated serial numbers.  Analogizing to the

First Amendment, the Third Circuit in *Marzzarella* concluded that the Second Amendment

can trigger more than one type of scrutiny, depending on the type of restriction. 614 F.3d at 96-97. The court decided intermediate scrutiny was appropriate because the law did not "severely limit the possession of firearms." *Id.* at 97. The Seventh Circuit in *Skoien* similarly applied intermediate scrutiny to a federal statute prohibiting the possession of firearms by any person convicted of a misdemeanor crime of domestic violence. 614 F.3d at 641. The intermediate scrutiny test applied by both courts generally requires an analysis of whether the challenged law serves a substantial state interest and whether there is a reasonable fit between the objective and the law. *Marzzarella*, 614 F.3d at 98.

The Tenth Circuit in *Reese* used a similar approach in examining a federal law which prohibits possession of a firearm by a person subject to a domestic protection order. 627 F.3d at 802. Although the regulation addresses a right protected by the Second Amendment, in that it creates a complete prohibition on possession of a firearm, the Tenth Circuit concluded that the statute applies to a narrow class of persons "who, based on their past behavior, are more likely to engage in domestic violence" and was therefore subject to intermediate scrutiny. *Id.* Applying this standard, the court found that the government had a substantial interest in keeping firearms out of the hands of people who have been found to pose a credible threat to the physical safety of a family member and that there was a reasonable relationship to that objective in the defendant's case. *Id.* at 803-4.

I will assume without deciding that the statute at issue falls within the scope of the Second Amendment in that it places restrictions on Plaintiff's right to carry a weapon for the purpose of self-defense. However, I disagree that the statute should be reviewed under strict scrutiny and conclude, like the cases discussed above, that intermediate scrutiny is appropriate. I agree with the Attorney General and the authorities discussed above that

15

*Heller* indicates that the Second Amendment extends the strongest protection to the right of self-defense in the home. The statute at issue does not infringe on that right, even for Plaintiff, as he is permitted to have a firearm in any dwelling area under his control while in the state. C.R.S. § 18-12-105(2)(a). Moreover, the statute burdens only a narrow class of persons, *i.e.*, otherwise qualified out-of-state residents who wish to obtain a license to carry a concealed weapon in Colorado. Moreover, as noted above, the statute is even less restrictive that the federal statutes discussed in *Reese* and *Skoien*, as it does not completely prevent this class of persons from possessing firearms while in the state. Rather, non-residents may carry openly outside of Denver and in Denver may have firearms in their private vehicles while traveling and in private dwelling areas. Therefore, it does not severely limit the possession of firearms but rather regulates "the manner in which persons may lawfully exercise their Second Amendment rights." *Marzzarella*, 614 F.3d at 97; *see also Peruta*, 2010 WL 5137137 at *8 (applying intermediate scrutiny to concealed weapons permit regulation, and holding that licensing requirements did not violate Second Amendment because of state's substantial interest in public safety and reducing the rate of gun use in crime).

The intermediate scrutiny test articulated by the Tenth Circuit and other courts is nearly identical to that employed in examining discrimination against non-residents under the Privileges and Immunities Clause, *i.e.*, there must be a substantial interest at stake and a good fit between the regulation and the asserted objective. Therefore, for the reasons discussed above, I conclude that the state's interest in monitoring a potential licensee's eligibility for a concealed handgun permit, and the increased difficulty of doing so for out-of-state residents, also overcomes Plaintiff's Second Amendment challenge.

16

3.      Equal Protection

The Attorney General moves for summary judgment on Plaintiff's Equal Protection

challenge to the statute on the grounds that a non-resident is not similarly situated to a

resident of the state.  Moreover, the Attorney General argues, even if Plaintiff could show

that he was similarly situated, the statute nonetheless survives because there is a rational

basis for the different treatment of out-of-state residents.  I agree.

The Equal Protection Clause provides that "[n]o State shall ... deny to any person

within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The

Clause "does not forbid classifications. It simply keeps governmental decisionmakers from

treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505

U.S. 1, 10 (1992).

As discussed above, I conclude that residents and non-residents are not similarly

situated in terms of the state's ability to obtain information about and monitor the potential

licensee's eligibility for a concealed weapons permit.  Because states "must treat like cases

alike but may treat unlike cases accordingly," *Vacco v. Quill*, 521 U.S. 793, 799 (1997),

and this involves unlike cases, Colorado's different treatment of non-residents does not

violate the Equal Protection Clause.  *See Peruta,* 2010 WL 5137137 at *10 (finding

residents and non-residents to be situated differently for the purposes of concealed

weapons permit in light of state's substantial interest in monitoring gun licensees).

This disposes of all of Plaintiff's constitutional challenges to Colorado's requirement

that only residents of the state are eligible to apply for concealed handgun permits.

Accordingly, it is ordered:

1.      Plaintiff's Motion for Summary Judgment against Defendant LaCabe (ECF

No. 17) is denied.

2.      Intervenor Attorney General's Cross-Motion for Summary Judgment (ECF

No. 34) is granted.  The claims against all parties are dismissed with

prejudice.  Judgment shall be entered in favor of Defendants and Intervenor

and against Plaintiff on all of his claims.

3.      Defendants LaCabe and Intervenor Attorney General may have their costs.

DATED at Denver, Colorado, on March 8, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 10-cv-00059-WDM-MEH

GRAY PETERSON,

     Plaintiff,

v.

ALVIN LACABE, in his official capacity as Manager
 of Safety for the City and County of Denver,

     Defendant,

JOHN W. SUTHERS, Attorney General
for the State of Colorado,

     Intervenor.

---

## FINAL JUDGMENT

---

     Pursuant to and in accordance with the Order On Motion To Dismiss And Cross

Motions For Summary Judgment (Doc. No. 26), signed by Senior District Judge Walker

D. Miller on October 20, 2010, incorporated herein by reference, it is

     ORDERED that the Motion To Dismiss Executive Director Peter Weir and

Colorado Attorney General's Request to be Heard (Doc. No. 6) is GRANTED.  It is

     FURTHER ORDERED that all claims against Defendant Peter Weir shall be

DISMISSED.  It is

     FURTHER ORDERED that John W. Suthers, Attorney General for the State of

Colorado, is a party to this action as an Intervenor.

     Pursuant to and in accordance with the Order On Cross Motions For Summary

Judgment (Doc. No. 45) signed by Senior District Judge Walker D. Miller on March 8,

2011, incorporated herein by reference, it is

ORDERED that Plaintiff's Motion For Summary Judgment against Defendant

LaCabe (Doc. No. 17) is DENIED.  It is

FURTHER ORDERED Intervenor Attorney General's Cross-Motion For Summary

Judgment (Doc. No. 34) is GRANTED.  It is

FURTHER ORDERED that judgment shall be entered in favor of the Defendant,

Alvin LaCabe, and Intervenor, John W. Suthers, Attorney General,  and against the

Plaintiff, Gray Peterson.  It is

FURTHER ORDERED that all claims against the parties are DISMISSED WITH

PREJUDICE.  It is

FURTHER ORDERED that the Defendant and Intervenor may have their costs.

DATED at Denver, Colorado this 15th day of March, 2011.

FOR THE COURT:

GREGORY C. LANGHAM, CLERK

s/ Edward P. Butler
Edward P. Butler, Deputy Clerk

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

CIVIL ACTION FILE NO.  10-CV-59-WDM-MEH

GRAY PETERSON,

      Plaintiff,

v.

ALVIN LACABE, in his official capacity as Manager of Safety for the City and County of Denver,

      Defendant,

PETER WEIR, in his official capacity as Executive Director of the Colorado Department of Public Safety,

      Defendant,

and

JOHN W. SUTHERS, Attorney General for the State of Colorado,

      Intervenor.

---

## PLAINTIFF'S NOTICE OF APPEAL

---

Notice is hereby given that Plaintiff in this action hereby appeals to the United States Court of Appeals for the Tenth Circuit from the Order granting Defendant Peter Weir's Motions to Dismiss entered on October 20, 2010, from the Order granting Intervenor John Suthers' Motion for Summary Judgment entered on March 8, 2011, and from the final judgment entered on March 15, 2011.

_____/s/ John R. Monroe_____
John R. Monroe
Attorney for Plaintiff
9640 Coleman Road
Roswell, GA  30075
678 362 7650
John.monroe1@earthlink.net

## CERTIFICATE OF SERVICE

I certify that on April 8, 2011, I filed the foregoing using the ECF system, which automatically will send copies electronically to:

Linda M. Davison
Attorney for Defendant LaCabe
Assistant City Attorney
Denver Dept. of Human Services
1200 Federal Blvd., 4th Floor
Denver, CO  80204
720-944-2626
Linda.davison@denvergov.org


Matthew D. Grove
Attorney for Intervenor Suthers
        And Defendant Weir
Assistant Attorney General
State Services Section
303-866-5264
matthew.grove@state.co.us


        /s/ John R. Monroe
John R. Monroe